[No. A138443. First Dist., Div. Three. Aug. 7, 2014.]

ARNULFO ALVAREZ et al., Plaintiffs and Appellants, v.
BAC HOME LOANS SERVICING, L.P., et al., Defendants and
Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, the Introduction, part 4 of the Discussion, and the Disposition of this opinion are certified for publication.

**COUNSEL**

Eric Andrew Mercer for Plaintiff and Appellant.

Elizabeth Letcher for Housing and Economic Rights Advocates as Amicus Curiae on behalf of Plaintiff and Appellants.

J.L. Pottenger, Jr., for Jerome N. Frank Legal Services Organizations as Amicus Curiae on behalf of Plaintiff and Appellants.

Kent Qian for National Housing Law Project as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bryan Cave, Douglas A. Thompson, Andrea M. Hicks and Katherine A. Keating for Defendants and Respondents.

**OPINION**

**POLLAK, Acting P. J.—**

### Introduction

Plaintiffs Arnulfo and Consuelo Alvarez and Enrique and Ofelia De Haro appeal from a judgment entered in favor of defendants BAC Home Loans Servicing, L.P., Bank of America, N.A., and ReconTrust Company, N.A. (collectively Bank of America), following the sustaining of defendants' demurrer to plaintiffs' second amended complaint (the complaint) without leave to amend.[1] The complaint alleges, among other things, fraud and unfair business practices in the origination of plaintiffs' residential mortgage loans, and negligence in the subsequent servicing of the loans, including negligent

---

[1] The complaint also names Meridias Capital, Inc., and certain individuals as defendants. These parties were not affected by the ruling on the demurrer, they are not parties to the appeal, and they are not included in references to "defendants" in this opinion.

review of plaintiffs' applications for loan modification. Plaintiffs contend the trial court erred in concluding that the complaint fails to allege fraud for which these defendants are responsible and in concluding that defendants owed no duty of care to the plaintiffs in the review of their applications for a loan modification. Although poorly drafted, we agree that potentially meritorious claims can be distilled from the allegations of the complaint. We shall therefore reverse the judgment as to the fraud, unfair competition and negligence causes of action, but shall not preclude the trial court from entering further orders designed to clarify the relevant allegations supporting viable claims for relief.

### Factual and Procedural History[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Discussion

1.–3.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *The complaint alleges a cause of action for negligence in the servicing of plaintiffs' loans.*

■ "To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. [Citation.] Whether a duty of care exists is a question of law to be determined on a case-by-case basis. [Citation.] [¶] We start by identifying the allegedly negligent conduct by [defendants] because our analysis is limited to 'the specific action the plaintiff claims the particular [defendant] had a duty to undertake in the particular case.' " (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62 [163 Cal.Rptr.3d 804].)

Contrary to defendants' characterization, plaintiffs do not allege that defendants owed plaintiffs a duty to offer or approve a loan modification. Rather, they allege that defendants owed them a duty to exercise reasonable care in the review of their loan modification applications once they had agreed to consider them. The complaint alleges (albeit awkwardly) that defendants "undertook to review" plaintiffs' loans for potential modification under the federal Home Affordable Modification Program (HAMP) and that

---

[*]See footnote, *ante*, page 941.

having done so they owed plaintiffs the duty to exercise reasonable care in processing and reviewing their applications for loan modifications in accordance with the federal HAMP guidelines. The complaint alleges that defendants breached this duty by (1) failing to review plaintiffs' applications in a timely manner, (2) foreclosing on plaintiffs' properties while they were under consideration for a HAMP modification and (3) mishandling plaintiffs' applications by relying on incorrect information. With respect to the mishandling of the applications, the complaint alleges that between February and April 2011, Alvarez was told by an employee of defendants named in the complaint that his application for modification of the loan secured by his primary residence had been rejected because his monthly gross income of $2,554.75 was inadequate, whereas his paystubs showed that his monthly gross income was $6,075. With respect to the loan on one of his rental properties, he was told that his application showed a $6,318.98 deficit in monthly income, while Alvarez alleges that there was no such deficit. With respect to the loan on his second rental property, the complaint alleges that defendants falsely advised him that no documents had been submitted for review when in fact documents were sent to and received by defendants. De Haro alleges that after working with defendants for over two years to obtain a loan modification, defendants advised him "that the second lien holder prevented the modification from taking place," which was false.

■ As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1095–1096 [283 Cal.Rptr. 53], citing *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 34–35 [161 Cal.Rptr. 516] [A "special relationship" between a lender and borrower exists only in those situations "when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.' "]; see *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206 [147 Cal.Rptr.3d 41] ["No fiduciary duty exists between a borrower and lender in an arm's length transaction."].) However, "[e]ven when the lender is acting as a conventional lender, the no-duty rule is only a general rule." (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 901 [153 Cal.Rptr.3d 546] (*Jolley*).) " '*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower. Rather, the *Nymark* court explained that the question of whether a lender owes such a duty requires "the balancing of [the '*Biakanja* factors'] . . . ." ' " (*Id.* at p. 901.)[5] Citing recent federal authority, the court in

---

[5] These balancing factors, as recognized in *Nymark*, " ' "are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the

*Jolley* agreed with the observation that " '*Nymark* and the cases cited therein do not purport to state a legal principle that a lender can never be held liable for negligence in its handling of a loan transaction within its conventional role as a lender of money.' " (*Jolley*, at p. 902, citing *Ottolini v. Bank of America* (N.D.Cal., Aug. 19, 2011, No. C-11-0477 EMC) 2011 U.S.Dist. Lexis 92900, p. *16.) In their appellate brief, defendants relied heavily on an appellate decision disagreeing with the views expressed in *Jolley*, but that opinion has subsequently been depublished by the Supreme Court. (*Aspiras v. Wells Fargo Bank, N.A.* (Aug. 21, 2013, D061449) review den. and opn. ordered nonpub. Jan. 15, 2014, S214297.)

In *Lueras v. BAC Home Loans Servicing, LP, supra,* 221 Cal.App.4th at page 67 the court held that a lender does not owe a borrower a common law duty "to offer, consider or approve" a loan modification. The court upheld an order sustaining a demurrer to a cause of action for negligence, explaining that "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies. The *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct. If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct." (*Id.* at p. 67.)

The court in *Lueras*, however, granted plaintiffs leave to amend to allege a cause of action for negligent misrepresentation. The court held that while a lender does not have a duty to offer or approve a loan modification, "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or

---

defendant's conduct, and [6] the policy of preventing future harm." ' " (*Nymark v. Heart Fed. Savings & Loan Assn., supra,* 231 Cal.App.3d at p. 1098, quoting *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16].) The continuing applicability of these factors has most recently been reconfirmed, in a different context, in *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568 [173 Cal.Rptr.3d 752, 327 P.3d 850]. There our Supreme Court held that the three considerations driving the analysis upholding the existence of a duty were "(1) the closeness of the connection between defendants' conduct and plaintiff's injury; (2) the limited and wholly evident class of persons and transactions that defendants' conduct was intended to affect; and (3) the absence of private ordering options that would more efficiently protect [the affected parties from the harm done in that case]." (*Id.* at p. 581.)

status of a foreclosure sale." (*Lueras v. BAC Home Loans Servicing, LP, supra,* 221 Cal.App.4th at p. 68.) The court explained, "It is foreseeable that a borrower might be harmed by an inaccurate or untimely communication about a foreclosure sale or about the status of a loan modification application, and the connection between the misrepresentation and the injury suffered could be very close." (*Id.* at p. 69.)

The opinion in *Lueras* cited numerous federal district court opinions that conclude a lender owes no duty of care to a borrower to modify a loan. (*Lueras v. BAC Home Loans Servicing, LP, supra,* 221 Cal.App.4th at pp. 64–65.)[6] The court also cited other district court decisions recognizing that a lender does owe a borrower a duty of care in negotiating or processing an application for a loan modification. (221 Cal.App.4th at pp. 64–65.)[7]

[6] (The opinion cites *Armstrong v. Chevy Chase Bank, FSB* (N.D.Cal., Oct. 3, 2012, No. 5:11-cv-05664 EJD) 2012 U.S.Dist. Lexis 144125, pp. *11–*12 ["[A] loan modification, which at its core is an attempt by a money lender to salvage a troubled loan, is nothing more than a renegotiation of loan terms. This renegotiation is the same activity that occurred when the loan was first originated; the only difference being that the loan is already in existence. Outside of actually lending money, it is undebatable that negotiating the terms of the lending relationship is one of the key functions of a money lender."]; *Diunugala v. JP Morgan Chase Bank, N.A.* (S.D.Cal., Oct. 3, 2013, No. 12cv2106-WQH-NLS) 2013 U.S.Dist. Lexis 144326, p. *10 ["Absent special circumstances, there is no duty for a servicer to modify a loan."]; *Sanguinetti v. CitiMortgage, Inc.* (N.D.Cal., Sept. 11, 2013, No. 12-5424 SC) 2013 U.S.Dist. Lexis 130129, p. *17 ["Loan modifications are part of the lending process, and negotiating a lending agreement's terms is one of a bank's key functions."]; *Bunce v. Ocwen Loan Servicing, LLC* (E.D.Cal., July 17, 2013, No. CIV. 2:13-00976 WBS EFB) 2013 U.S.Dist. Lexis 100111, p. *15, [lender does not owe duty in loan modification activities]; *Kennedy v. Bank of America, N.A.* (N.D.Cal., Apr. 26, 2012, No. 12-CV-952 YGR) 2012 U.S.Dist. Lexis 58636, pp. *21–*22 [lender owes borrower no duty of care in process of approving loan modification]; *Dooms v. Federal Home Loan Mortgage Corp.* (E.D.Cal., Mar. 31, 2011, No. CV F 11-0352 LJO DLB) 2011 U.S.Dist. Lexis 38550, p. *28 ["The [lender] owed no duty of care to [the borrower] arising from her default, property foreclosure, and loan modification attempts."]; *DeLeon v. Wells Fargo Bank, N.A.* (N.D.Cal., Oct. 22, 2010, No. 10-CV-01390-LHK) 2010 U.S.Dist. Lexis 112941, p. *12 [the defendant lender did not have a duty "to complete the loan modification process"].)

[7] (*Ansanelli v. JP Morgan Chase Bank, N.A.* (N.D.Cal., Mar. 28, 2011, No. C 10-03892 WHA) 2011 U.S.Dist. Lexis 32350, pp. *21–*22 [allegation that lender offered plaintiffs a loan modification and "engage[d] with them concerning the trial period plan" was sufficient to create duty of care]; *Watkinson v. MortgageIT, Inc.* (S.D.Cal., June 1, 2010) 2010 U.S.Dist. Lexis 53540, pp. *23–*24 [duty of care found where bank knowingly misstated borrower's income and value of property on loan application, and where borrower sought but was denied a loan modification]; *Becker v. Wells Fargo Bank, N.A., Inc.* (E.D.Cal., Nov. 30, 2012, No. 2:10-cv-02799 LKK KJN PS) 2012 U.S.Dist. Lexis 170729, pp. *34–*35 [complaint stated claim against lender for negligence during the loan modification process]; *Crilley v. Bank of America, N.A.* (D. Hawaii, Apr. 26, 2012, No. 12-00081 LEK-BMK) 2012 U.S.Dist. Lexis 58469, p. *29 [denying motion to dismiss because plaintiffs "have pled sufficient facts to support a finding that Defendant went beyond its conventional role as a loan servicer by soliciting Plaintiffs to apply for a loan modification and by engaging with them for several months" regarding the modification]; *Garcia v. Ocwen Loan Servicing, LLC* (N.D.Cal., May 10,

*Garcia v. Ocwen Loan Servicing, LLC, supra,* 2010 U.S.Dist. Lexis 45375 at pages *7–*11 is representative of those cases that have found that the *Biakanja* factors weigh in favor of imposing a duty of care on a lender that undertakes to review a loan for potential modification. The court explained, "Based on the foregoing factors,[ the . . .] lender arguably owed Plaintiff a duty of care in processing Plaintiff's loan modification application, as at least five of the six factors weigh in favor of finding a duty of care. [¶] The transaction was unquestionably intended to affect Plaintiff. The decision on Plaintiff's loan modification application would determine whether or not he could keep his home. [¶] The potential harm to Plaintiff from mishandling the application processing was readily foreseeable: the loss of an opportunity to keep his home was the inevitable outcome. Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief. [¶] The injury to Plaintiff is certain, in that he lost the opportunity of obtaining a loan modification and . . . his home was sold. [¶] There is a close connection between Defendant's conduct and any injury actually suffered, because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Defendant's conduct in misdirecting the papers submitted by Plaintiff directly precluded the loan modification application from being timely processed. [¶] The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis. See, e.g., CAL.CIV.CODE § 2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); *see also,* Press Release at http://gov.ca.gov/press-release/14871 ('Gov. Schwarzenegger Signs Legislation to Provide Greater Assistance to California Homeowners'), and MakingHomeAffordable.gov (describing the federal 'Making Home Affordable Program'). [¶] Whether or not moral blame attaches to this Defendant's specific conduct is not clear at this stage of the proceedings. However, in light of the other factors weighing in favor of finding a duty of care, the uncertainty regarding this factor is insufficient to tip the balance away from the finding of a duty of care." (*Id.,* at pp. *9–*10.)

■ We find the *Garcia* court's reasoning persuasive and applicable to the facts alleged in the present case. Here, because defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors clearly weigh in favor of a duty. The transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants. Plaintiffs allege that the mishandling of their applications "caus[ed] them to lose title to their home, deterrence from seeking other remedies to

2010, No. C 10-0290 PVT) 2010 U.S.Dist. Lexis 45375, pp. *7–*11 [plaintiff's allegations of lender's conduct in handling application for loan modification pleaded a duty of care].)

address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages." As stated in *Garcia*, "Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief." (*Garcia v. Ocwen Loan Servicing, LLC, supra*, 2010 U.S.Dist. Lexis 45375, p. *9.) Should plaintiffs fail to prove that they would have obtained a loan modification absent defendants' negligence, damages will be affected accordingly, but not necessarily eliminated.

With respect to whether defendants' conduct was blameworthy—the fifth *Biakanja* factor—it is highly relevant that the borrowers "ability to protect his own interests in the loan modification process [is] practically nil" and the bank holds "all the cards." (*Jolley, supra*, 213 Cal.App.4th at p. 900.) As explained in the amicus curiae brief filed by Housing and Economic Rights Advocates et al.: "Traditional mortgage lending involved a bank evaluating a borrower and her security, and issuing a loan with terms reflecting the perceived risk that the borrower would default. The same bank would then (i) retain the loan, making its profit on the interest the borrower paid; and (ii) service the loan, meaning that it would be in contact with the borrower directly, collecting the borrower's payments and negotiating any changes in loan terms. *See* Eamonn K. Moran, *Wall Street Meets Main Street: Understanding the Financial Crisis* (2009) 13 N.C. Banking Inst. 5, 32 (' "Traditionally, banks managed loan[s] 'from cradle to grave' as they made mortgage loans and retained the risk of default, called credit risk, and profited as they were paid back." ') [Citation.] [¶] These tasks have been dispersed among different actors in the modern mortgage servicing context, however, changing the relationships between the borrower, the loan originator, the ultimate holder of the loan, and the servicer of the loan. [¶] First, borrowers are captive, with no choice of servicer, little information, and virtually no bargaining power. Servicing rights are bought and sold without input or approval by the borrower. Borrowers cannot pick their servicers or fire them for poor performance. The power to hire and fire is an important constraint on opportunism and shoddy work in most business relationships. But in the absence of this constraint, servicers may actually have positive incentives to misinform and under-inform borrowers. Providing limited and low-quality information not only allows servicers to save money on customer service, but increases the chances they will be able to collect late fees and other penalties from confused borrowers."

The borrower's lack of bargaining power, coupled with conflicts of interest that exist in the modern loan servicing industry, provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification. Moreover, the

allegation in the complaint that defendants engaged in "dual tracking," which has now been prohibited (see Civ. Code, §§ 2923.6, 2924.18) increases the blame that may properly be assigned to the conduct alleged in the complaint. (*Jolley, supra*, 213 Cal.App.4th at p. 901.)

The policy of preventing future harm also strongly favors imposing a duty of care on defendants. As noted in *Jolley, supra*, 213 Cal.App.4th at page 903, "[T]he California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost." The California Homeowner Bill of Rights (HBOR) (Assem. Bill No. 278 (2011–2012 Reg. Sess.); Sen. Bill No. 900 (2011–2012 Reg. Sess.)), which became effective January 1, 2013, demonstrates "a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification." (*Jolley*, at p. 903.)

Among other things, the HBOR attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure while evaluating a borrower's loan modification application. (Civ. Code, §§ 2923.6, 2924.18.) The HBOR also requires mortgage servicers to provide borrowers with a single point of contact "responsible for doing all of the following: [¶] (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options. [¶] (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application. [¶] (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative. [¶] (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any. [¶] (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary." (Civ. Code, § 2923.7, subd. (b).) The HBOR requires further that "When a borrower submits a complete first lien modification application or any document in connection with a first lien loan modification application, the mortgage servicer shall provide written acknowledgement of the receipt of the documentation within five business days of receipt. In its initial acknowledgement of the loan modification application, the mortgage servicer shall include . . . [¶] (1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative. [¶] (2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first

lien loan modification application. [¶] (3) Any expiration dates for submitted documents. [¶] (4) Any deficiency in the borrower's first lien loan modification application." (Civ. Code, § 2924.10, subd. (a).) To enforce the new requirements, the HBOR creates a private right of action allowing a borrower to seek injunctive relief to enjoin a material violation of the act prior to foreclosure and to assert a claim for damages for a violation of the act following foreclosure. (Civ. Code, § 2924.12, subds. (a), (b).)

■ Although the provisions of the HBOR had not yet become effective at the dates relevant to the present action, the legislation nonetheless "sets forth policy considerations that should affect the assessment whether a duty of care was owed to [plaintiffs] at that time." (*Jolley, supra*, 213 Cal.App.4th at p. 905.) Much of the conduct that plaintiffs allege breached a duty of care in this case—failing to process the applications in a timely manner, dual tracking and losing documents—is conduct now regulated by the HBOR. While the explicit articulation of the lender's duties was not available when plaintiffs applied for loan modification, these obligations fall well within the duty to use reasonable care in the processing of a loan modification. Recognizing this general duty will not place an undue burden on mortgage banks and servicers, nor will it have a chilling effect on borrowers' ability to obtain loan modifications.

■ Defendants' remaining arguments are also without merit. Plaintiffs have sufficiently alleged a breach of the duty of care. Plaintiffs have also alleged that the improper handling of their applications deprived them of the opportunity to obtain loan modifications, which they allege they were qualified to receive and would have received had their applications been properly reviewed, and alternatively, that the delay in processing deprived them of the opportunity to seek relief elsewhere. Finally, plaintiffs' failure to tender the outstanding balances on their loans does not deprive them of standing to pursue their negligence claim. Defendants cite cases holding that tender of the indebtedness is required in an action to set aside a trustee's sale for irregularities in sale notice or procedure. (See, e.g., *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575 [205 Cal.Rptr. 15] [defect in notice of sale]; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112 [92 Cal.Rptr. 851] [trustee sold property to a corporation in which trustee was financially interested].) Tender of the unpaid debt is not necessarily required, however, to set aside a sale in other circumstances, including an action seeking relief based on allegedly fraudulent and unlawful business practices relating to the marketing of the subject loan. (See, e.g., *Menan v. U.S. Bank National Assn.* (E.D.Cal. 2013) 924 F.Supp.2d 1151, 1160 ["The law does not require plaintiff to tender the purchase price to a trustee who has no right to sell the property at all."]; *Ohlendorf v. American Home Mortgage Servicing* (E.D.Cal. 2010) 279 F.R.D. 575, 580 [Under California law, borrower was not required to tender loan proceeds before bringing claims

against lender and related parties for fraud and violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), where borrower asserted no causes of action that relied on any irregularity in mortgage foreclosure sale itself]; *Azzini v. Countrywide Home Loans* (S.D.Cal., Dec. 29, 2009, No. 09cv787 DMS (CAB)) 2009 U.S.Dist. Lexis 120599 [tender not required where complaint seeks relief based on fraud and unfair business practices].)

5. *Plaintiffs have alleged a cause of action against ReconTrust.*[*]

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## Disposition

The judgment is reversed as to plaintiffs' first, second and sixth causes of action and the matter is remanded to the trial court for further proceedings consistent with this opinion. Plaintiffs shall recover their costs on appeal.

Siggins, J., and Jenkins, J., concurred.

---

[*]See footnote, *ante,* page 941.