Filed 1/12/16  Samaduroff v. Bank of America CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| PETER SAMADUROFF et al., | |
| Plaintiffs and Appellants, | G052135 |
| v. | (Super. Ct. No. RIC1117687) |
| BANK OF AMERICA, N.A. for itself and as Successor etc. et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Riverside County, Matthew C. Perantoni, Judge.  Affirmed.

Stephen R. Golden & Associates, Stephen R. Golden and Elaine D. Etingoff for Plaintiffs and Appellants.

Reed Smith, Matthew J. Brady, Michael E. Gerst, and Myles A. Lanzone for Defendants and Respondents.

\*        \*        \*

Plaintiffs Peter and Vicki Samaduroff[1] defaulted on their home mortgage loan. Between 2007 and 2013, communications pertaining to potential loan modifications were exchanged between plaintiffs and some of the defendants. These discussions did not conclude in a modification of the loan. Plaintiffs sued defendants under a lengthy list of legal theories, including fraud, negligence, intentional infliction of emotional distress, and unfair competition under Business and Professions Code section 17200 (section 17200). The trial court granted summary judgment in favor of defendants and we affirm.

FACTS

*The Loan and the Parties*

This case concerns 3743 Holly Springs Drive in Corona, California (the Property). In December 2005, plaintiffs borrowed $527,000 to refinance an existing mortgage loan secured by the Property. The loan terms included a repayment period of 30 years at a fixed rate of 5.95 percent, with an initial five-year term during which plaintiffs would be obligated to pay only interest. The scheduled monthly payment for the first five years was $2,613.04 and the scheduled monthly payment for the remaining 25 years was $3,379.38. The loan was secured by a deed of trust.

Defendants include Bank of America, N.A. (Bank of America),[2] ReconTrust Company N.A. (ReconTrust), The Bank of New York Mellon, as trustee for the Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2005-16 (Mellon), and Kevin Rudolph, whom plaintiffs describe as a "known Robo-signer."

---

[1] For clarity, we refer to plaintiffs individually by their first names, and collectively as "plaintiffs." We intend no disrespect.

[2] Bank of America includes separately named defendant BAC Home Loans Servicing, LP, which merged with Bank of America.

2

The December 2005 refinance lender was identified as "America's Wholesale Lender," which was a name under which Countrywide Home Loans, Inc. (Countrywide) did business. Countrywide also acted as the initial servicer of the loan. But Bank of America acquired Countrywide in January 2008 and has acted as loan servicer since that acquisition. For purposes of this appeal, we will attribute the conduct of Countrywide and its employees to Bank of America.

The deed of trust identified ReconTrust as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary ("acting solely as a nominee"). In March 2011, MERS assigned its beneficial interest in the deed of trust to Mellon.

*Procedural History and Allegations of Operative Complaint*

Plaintiffs sued defendants in November 2011. Plaintiffs' operative complaint alleges (1) promissory estoppel, (2) fraud, (3) deceit, (4) negligence, (5) violations of section 17200, (6) breach of fiduciary duty, (7) additional violations of section 17200, (8) intentional infliction of emotional distress, (9) negligent infliction of emotional distress, (10) quiet title, and (11) declaratory relief.

Underlying these causes of action are allegations that defendants engaged in unfair tactics that misled plaintiffs into believing Bank of America would approve loan modifications. Plaintiffs allege they had numerous phone conversations and other communications with Bank of America employees. By suggesting in these communications that it was reviewing and/or approving loan modifications for plaintiffs, Bank of America allegedly induced reliance by plaintiffs, whereby they refrained from taking more productive steps (e.g., filing for bankruptcy protection) to save the Property from foreclosure.[3]

---

[3] The operative complaint also alleges in general terms that plaintiffs were subjected to predatory lending tactics in connection with the 2005 loan, but it does not appear these factual allegations are pertinent to the causes of action before us in this

3

Defendants demurred to plaintiffs' operative complaint. The court sustained the demurrer as to all causes of action other than fraud (alleged only against Bank of America), negligence (alleged only against Bank of America), section 17200 violations (alleged only against Bank of America and Mellon), and intentional infliction of emotional distress (alleged only against Bank of America and Mellon). Plaintiffs do not contend the court erred in its demurrer ruling; this appeal therefore does not appear to affect the rights of defendants ReconTrust or Randolph.

Defendants moved for summary judgment on the remaining causes of action, and the court granted the motion. Plaintiffs timely appealed the ensuing judgment, limiting their arguments on appeal to alleged errors by the court in granting the summary judgment motion.

*Summary Judgment Record — Plaintiffs' Default and Modification Efforts*

The gist of defendants' motion was to document the reasonableness of their actions and to demonstrate the lack of any legally cognizable damages. Defendants' motion included evidence from two declarants: (1) an assistant vice-president of Bank of America, who (based on a combination of personal knowledge and his investigation and review of Bank of America's files and records) described the history of the loan, identified interactions between plaintiffs and Bank of America pertaining to potential loan modifications, and authenticated various documents pertinent to the dispute; and (2) one of defendants' attorneys, who authenticated deposition transcript excerpts. We summarize the evidentiary showing made by defendants.

Plaintiffs made timely mortgage payments from December 2005 through April 2006, after which they missed some of their scheduled payments. Plaintiffs admit they have not made *any* loan payments since approximately April 2008. Vicki testified at

appeal.

4

her deposition that plaintiffs stopped making mortgage payments altogether because they "were trying to negotiate a new modification." While elsewhere blaming Bank of America for her lack of mortgage payments after April 2008, Vicki explained in response to a special interrogatory that she was told by a firm she hired to renegotiate her loan that Bank of America "would not consider us for a loan modification while making monthly payments."

In July 2006, Bank of America transmitted a notice of default and acceleration to plaintiffs, informing plaintiffs that they owed $5,356.73 (two missed payments, plus late charges). The letter notified plaintiffs of their right to cure the default, and also noted various "options that may be available to you . . . to prevent a foreclosure sale of your property." Options listed included a repayment plan (allowing repayment of the late amount over time), a short sale of the Property, and a loan modification. The loan modification bullet point stated, "It is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types." The letter included a toll-free number for a loan counseling center.

Plaintiffs did not cure their default. ReconTrust recorded a notice of default and election to sell under the deed of trust in April 2007, at which time plaintiffs were $9,977.24 in arrears.

In November 2007, Bank of America sent plaintiffs a letter rejecting an apparent request for assistance by plaintiffs because "[t]he financial information submitted indicates that [plaintiffs did] not have the resources to support a loan modification." At that time, Vicki's income was between $60,000 and $75,000, and Peter's income was under $40,000.

5

However, in April 2008 (i.e., just after Bank of America acquired Countrywide), Bank of America sent plaintiffs a proposed loan modification ("We are pleased to advise you that your loan modification has been approved"). Plaintiffs were required to pay $3,290 in fees in order to accept the modification. The terms of the proposed modification added $18,291.29 in accumulated interest and $10,078.53 in accumulated amounts owed to the escrow account, resulting in a new principal balance of $555,369.82 (i.e., up from the original borrowed amount of $527,000). Plaintiffs' new monthly interest-only payment would be $2,753.71 (i.e., up from the original loan payment of $2,613.04).[4] The interest rate was the same as the original loan (5.95 percent), but the loan no longer required amortizing payments to begin after the first five years. Instead, the loan provided for minimum payments of interest only until January 2036, at which time the full principal amount owed would be due. Plaintiffs did not accept this loan modification offer. In her deposition testimony, Vicki explained, "We declined it because we had asked for a reduction of interest rate instead of the interest only or amortized rate." She "[w]anted to renegotiate a lower interest rate and a fixed rate." Six "percent was pretty high even back in 2008."

Bank of America offered another loan modification in December 2008. This proposed modification (again incorporating ever-growing unpaid interest and other amounts) featured a modified balance of $574.369.12 and a modified monthly payment of $2,847.91. The proposed interest rate remained unchanged at 5.95 percent. Like the prior proposed modification agreement, plaintiffs would be obligated to pay only accumulating interest until January 2036, at which time any remaining principal owed would come due. Plaintiffs did not accept this loan modification either. There is a

---

[4] There is some confusion in the record as to the proposed repayment amount. The parties are in agreement that this amount was $3,298.11. But it is important to note this higher amount included a monthly escrow fund payment, not just mortgage interest payments. An apples to apples comparison is more enlightening than comparing this $3,298 number to the original interest only mortgage payment.

dispute as to whether plaintiffs actually received this proposed modification (though it was addressed to them), but Vicki admits plaintiffs likely would not have accepted the modification offer because it was the same as the prior modification offer.

In 2009, Peter retired, cutting his income significantly. The same year, Vicki went on disability leave, reducing her income by approximately 50 percent.

In July 2010, Bank of America sent plaintiffs a letter stating that they might be eligible for a loan modification under the federal Home Affordable Modification Program (HAMP). Plaintiffs submitted financial documents to Bank of America in response to this invitation. Bank of America sent a follow-up letter in November 2010 requesting additional documents to complete the loan modification review. Bank of America ultimately sent a letter denying the loan modification in January 2011, citing excessive forbearance: "Your loan is not eligible for a [HAMP] because we are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your loan beyond the requirements of the program. In other words, to create an affordable payment for you, the investors (owner) of your loan would be required to delay collecting too large a portion of your principal balance until the loan pays off, beyond what the [HAMP] allows." Plaintiffs appealed this denial, and Bank of America denied plaintiffs' appeal.

In March 2011, ReconTrust recorded a notice of trustee's sale, showing a balance of $667,077.32 owed by plaintiffs. Though the notice suggested the property would be sold at auction in April 2011, the trustee's sale apparently did not occur.

In July 2011, plaintiffs applied for an "in-house" loan modification with Bank of America.[5] In November 2012, Bank of America denied plaintiffs' application for the in-house loan modification, and plaintiffs did not appeal that decision.

---

[5]    As noted above, plaintiff's lawsuit was filed in November 2011.

Plaintiffs submitted a new application for a loan modification in February 2013, and Bank of America denied that application in April 2013. Plaintiffs appealed the April 2013 denial during the following month, and Bank of America denied that appeal in August 2013.

Obviously, plaintiffs never secured a modification of their December 2005 mortgage loan. At the same time, they have not paid Bank of America anything since at least April 2008, and more than $200,000 in missed payments and fees have accrued. At least as of the time of the summary judgment motion, plaintiffs retained possession of the Property. There is no evidence in the record that a foreclosure sale has actually occurred; Vicki admitted at her April 2013 deposition that she still resided at the Property and a foreclosure sale had not occurred. She also admitted plaintiffs have not been paying property taxes or property insurance.

*Lack of Evidence from Plaintiffs in the Summary Judgment Record*

By written order, the trial court overruled all of plaintiffs' objections to defendants' evidence submitted in support of summary judgment and sustained all of defendants' objections to plaintiffs' proffered evidence. Plaintiffs did not provide a reporter's transcript or argue in their appellate briefs that the court erred in its evidentiary rulings. Any challenge to the court's rulings on the parties' evidence is therefore waived. (See *Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354, 368.)

Despite the waiver, we note several of the reasons defendants' objections were well taken and other reasons plaintiffs' evidentiary submissions did little to enhance the record. Plaintiffs' opposition papers included three documents labeled as declarations. None of the three declarations were executed under penalty of perjury. (See Code Civ. Proc., § 2015.5.) Thus, the court was justified in ignoring these documents in their entirety. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33

8

Cal.4th 601, 606, 609-618 [declarations not meeting the requirements of § 2015.5 are properly excluded from evidence on summary judgment motion].)

The (purported) declaration filed by plaintiffs' attorney was, for the most part, legal argument rather than testimony as to relevant facts. This attorney declaration discusses a case (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079) and a legal issue (the right of MERS to assign rights as beneficiary to Mellon) not pertinent to the summary judgment motion. Plaintiff's attorney requested leave to amend the complaint, an issue not before us in this appeal. The only pertinent information concerns the resolution of the appeal of plaintiffs' most recent modification request, but this point is inconsequential to the merits of the motion.

The (purported) declaration of a "negotiator" working for plaintiffs consisted largely of speculation and improper legal conclusions masquerading as expert testimony. For instance, the negotiator opined (without any foundation as to plaintiffs' income in 2007 or the standard by which such income should be judged as sufficient), "Plaintiffs income in 2007 was sufficient to support a loan modification, and Defendants' denial that Plaintiff's 'do not have the resources to support a loan modification' was false and shows a lack of good faith on the part of Defendants." The negotiator observed, "[m]any times a decrease in income can actually qualify a borrower for a loan modification." And then the negotiator concluded "[t]he alleged 'loan modifications' offered by Defendant in April and December of 2008, were not true loan modifications. This is because both of them constituted an increase in payment over the current payment owed by the borrowers." In short, the negotiator restated facts obtained from reading documents already in the record and characterized those facts (e.g., the last paragraph in the declaration attributed "delaying tactics" to Bank of America's motive to "add fees, late charges, and escrow surcharges"). The negotiator did make one relevant factual claim, although it was vague: "Starting in March of 2011, we continued to work with the bank to facilitate a settlement through re-structuring our clients' loan via the modification

9

process.  We were continually asked for documents that had already been submitted; told documents had not been received, and dealt with in a manner inconsistent with a desire to negotiate in good faith."

The one-page (purported) declaration of Vicki is mostly speculation, with vague information sprinkled in for good measure.  "For over 3 years we were given the run around by Defendants.  They constantly lost our paperwork and made us refax it to them.  I do not believe we ever received a good faith review for a loan modification." "At the time when our income decreased in 2009, our expenses also went down considerably at the same time."  "If Defendant would have honestly and in good faith reviewed us for a loan modification at the beginning of the process, without playing all of the games [as referenced in the complaint], I would have contacted an attorney earlier in the process, and . . . I believe we would have filed for Bankruptcy to save our home." Vicki denied receiving the April 2007 notice of default or the December 2008 loan modification offer.  With regard to the April 2008 loan modification, she rejected it because it "was actually an increase over our actual payment at the time of $2,668.  The purpose of wanting to receive a lower interest rate was to receive a lower payment.  The payment received was excessive."  She also claimed Bank of America had "refused to accept payments" since April 2008.  But in her deposition, Vicki admitted she did not actually try to make a payment, but was instead speculating that such a payment may have been rejected.

Plaintiffs also relied below and in their appellate briefs here on the allegations of their own operative complaint in an attempt to establish a triable issue of fact.  But "a party cannot rely on the allegations of his own pleadings, even if verified, to make or supplement the evidentiary showing required in the summary judgment context." (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7.)

10

In sum, *no* evidentiary material was actually added to the summary judgment record by plaintiffs' opposition papers. And even if one were to credit factual statements made in the documents inaccurately labeled as declarations, it would not significantly change the facts established by defendants in their moving papers. There is nothing close to admissable evidence in the record suggesting plaintiffs were ever, for instance, promised a loan modification with particular terms (e.g., a lower interest rate than their 2005 loan) but were subsequently not provided with those terms.

DISCUSSION

"A defendant meets his or her burden in a summary adjudication motion 'by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by demonstrating the absence of evidence to support the plaintiff's case.'" (*Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 504.) "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . . The plaintiff . . . shall not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) "'We review questions of law as well as orders granting summary adjudication under the de novo standard of review.'" (*Angelica Textile Services, Inc.*, at p. 504.)

The undisputed evidence can be summarized as follows: plaintiffs took out a mortgage loan; plaintiffs stopped making payments on their loan; plaintiffs requested modifications to their loan; Bank of America offered to modify the loan on at least one occasion, but on terms not acceptable to plaintiffs; defendants have refrained from actually conducting a foreclosure sale; and plaintiffs have continued to live at the

11

Property without paying for their loan (or other expenses, such as property taxes and property insurance).

Even ignoring evidentiary shortcomings in the record, the most one can say for plaintiffs' case is that Bank of America did not always efficiently and expeditiously process plaintiffs' repetitive requests for modifications. Basically, plaintiffs contend they should be compensated for being subjected to what they perceived as "the runaround" and for having refrained from filing for bankruptcy protection to try to "save" their home from foreclosure. Plaintiffs have not specified why they are unable to file for bankruptcy right now, as the foreclosure has not actually gone forward yet.[6]

With this record in mind, we turn to an examination of the individual causes of action that were the subject of defendants' summary judgment motion.

*Fraud*

Plaintiffs allege Bank of America committed fraud and they were damaged as a result of the fraud in the sum of $2 million. In order to succeed on a fraud claim, a plaintiff must prove the following elements: "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

The complaint highlights alleged misrepresentations by Bank of America employees Michael (in August 2008, when he stated to plaintiffs on the telephone that they were approved for a modification and the paperwork was in the mail) and Jean (in May 2009, who indicated that "loan approval was forthcoming and that documentation would be mailed out shortly"). Plaintiffs' alleged damages consist of "the possibility of losing their home" and their failure to pursue "any other options to keep their home, such

---

[6] Nothing in the record or the parties' appellate briefs explains the likely consequences of a bankruptcy filing by plaintiffs, whether in the past or now.

as bankruptcy, etc." The complaint claims plaintiffs' subjection to "onerous foreclosure proceedings" and "the possibility of the loss of their family residence" supports damages of $2 million.

There is no evidence in the record of these alleged misrepresentations, and it is debatable whether these statements misrepresented anything. But Bank of America's motion did not disprove that these communications (or others like them) occurred or demonstrate the absence of evidence of these communications. Instead, Bank of America ignored allegations that individual misleading phone conversations occurred. Bank of America chose to focus on demonstrating the reasonable things it did to accommodate plaintiffs' demands (e.g., repeatedly consider modification requests, offer modifications on two occasions, and refrain from foreclosing on the Property).

Bank of America definitely met its burden, though, by presenting evidence negating plaintiffs' damage claim. Plaintiffs "must suffer actual monetary loss to recover on a fraud claim." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240.) Defendants were not required to disprove every potential form of damages, only those raised by the complaint. (See *Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 419 [allegations of damages not pleaded in the complaint need not be considered on summary judgment motion]; *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498-1501 [homeowner's fraud damages must be alleged with particularity; vague accusations they were harmed by alleged oral promises to modify a loan are not sufficient].)

Bank of America established with evidence that plaintiffs had not paid anything since at least April 2008 (i.e., the same time the first modification offer was sent by Bank of America), yet they remained in possession of the Property because a foreclosure had not occurred. In the absence of a foreclosure or plaintiffs' continuing to pay loan payments in reliance on a lender's promises, plaintiffs' reference to their failure to pursue bankruptcy or other measures to "save" the Property is incoherent. (Cf. *West v.*

13

*JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 786, 795, 804-805 [allegations that plaintiffs made additional payments in reliance on promise foreclosure would not happen, but bank broke promise and foreclosed on home].)[7]

Plaintiffs try to salvage their case by reference to other potential ways they might prove damages — administrative costs of applying for modifications, attorney fees, and emotional distress. None of these theories work, even ignoring the fact that the complaint did not describe these categories of damages in the fraud cause of action. "Time and effort spent assembling materials for an application to modify a loan is the sort of nominal damage subject to the maxim *de minimus non curat lex* — i.e., the law does not concern itself with trifles." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 79 (*Lueras*).) To the extent plaintiffs claim their particular efforts were not *de minimus* because of the eight-year period during which they continually asked for modifications, Bank of America's evidentiary showing effectively demonstrated plaintiffs' extended efforts could not be in reasonable reliance on any of the alleged misrepresentations (but were instead caused by plaintiffs' persistence). Plaintiffs' attorney fees, of course, are not an element of damages. (See *Mega RV Corp. v. HWH Corp.* (2014) 225 Cal.App.4th 1318, 1337-1338 [attorney fees are not damages, except in circumscribed circumstances in which tort of another doctrine applies].) Finally,

---

[7] Plaintiffs cite a long list of cases for the proposition that damages may be possible "if the borrower alleges something more than the continuance of payments of the monthly mortgage." But in all but one of these cases (which were all based on trial courts sustaining demurrers rather than granting summary judgment motions), it is clear a foreclosure sale actually occurred. (*Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1405-1406; *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 944-945; *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 301-303; *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 786.) In the other case, it is not specified whether the trustee's sale actually went forward, but it was alleged plaintiffs received a trial modification plan under HAMP, which plaintiffs relied on by making payments to the lender with the expectation that the modification would be approved if they met their payment obligations. (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 918-921.)

"[e]motional distress is [generally] not recoverable as an element of damages for fraud." (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 67; see *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1269 [emotional distress damages for fraud only recoverable if other legally cognizable damages are also pleaded and proved].)  In sum, Bank of America is entitled to summary adjudication of the fraud cause of action because there is no triable issue of fact with regard to damages.

*Negligence*

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.)

Bank of America may have had a duty of care in this case pursuant to the allegations of the complaint.  This area of law is unsettled as to how far this duty should extend.  "'[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206.)  "[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." (*Lueras*, *supra*, 221 Cal.App.4th at p. 67.)  Lenders and servicers do "not have a common law duty to offer, consider, or approve a loan modification, or to offer [borrowers] alternatives to foreclosure." (*Id.* at p. 68; but see *Alvarez v. BAC Home Loans Servicing*, *L.P.*, *supra*, 228 Cal.App.4th at pp. 948-949 [lenders who agree to consider loan modification take on duty of care with regard to handling of application].)  At a minimum, "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." (*Lueras*, at p. 68 (maj. Opn. of Fybel, J.); but see *id*. at p. 95 (dis. opn. of Thompson, J.).)

15

Most of the statements by Bank of America representatives are not alleged to be false, but instead appear to be indicative of plaintiffs' complaints about the delays and inefficiencies in Bank of America's process (e.g., repeated instances of phone conversations in which the Bank of America representative indicated that "modification is pending approval"). Plaintiffs also alleged various representations concerning the status of their application for a loan modification. Whether these misrepresentations were false or material is another question. Alleged misrepresentations did not, for instance, promise plaintiffs a modification with a reduced interest rate. The alleged misrepresentations were much more prosaic. For example, certain representatives would state paperwork was "in the mail" but the paperwork would not arrive. Inconsistent messages were provided at various times concerning whether a modification request was approved or still "in review." Bank of America did not attempt to prove these communications did not occur.

Regardless, Bank of America is entitled to summary adjudication of the negligence cause of action because there is no triable issue of fact as to damages. The operative complaint alleges in the negligence cause of action that plaintiffs "actually suffered injury from the inability of [Bank of America] to properly process their loan modification applications over the past 3 years . . . ." As explained above with regard to fraud, there is no triable issue of fact as to damages.[8]

---

[8] If plaintiffs are making a claim that Bank of America had a duty to provide them with a better modification than those offered (and that their damages are the difference in the amount accrued under their actual loan and the hypothetical loan they should have gotten), we reject that argument.

16

*Section 17200 Violations*

Plaintiffs charge Bank of America and Mellon with violations of section 17200, which prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." "'Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent.'" (*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)

Only a private plaintiff who has "suffered injury in fact and has lost money or property as a result of the unfair competition" has standing to sue under section 17200. (Bus. & Prof. Code, § 17204.) A private plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by* the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.)

Here, plaintiffs have suffered no economic injury. They have been living in the Property without paying their loan for roughly seven years. This is not a case in which the homeowner's residence was sold at a foreclosure sale. (See, e.g., *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 786.) Nor is there a triable of issue of fact as to any other type of economic harm which could provide standing to plaintiffs to pursue a section 17200 claim. Defendants are entitled to summary adjudication of the section 17200 claim.

*Intentional Infliction of Emotional Distress*

Finally, plaintiffs allege Bank of America and Mellon intentionally inflicted emotional distress on plaintiffs. The complaint classifies as outrageous conduct the allegedly false statements by Bank of America employees and steps taken by defendants toward foreclosing on the Property. In their depositions, plaintiffs claimed they suffered from stress, headaches, and lack of sleep as a result of defendants' actions.

The elements of intentional infliction of emotional distress are: "'"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."'" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) To be considered outrageous, conduct "'must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" (*Ibid.*) "Liability for intentional infliction of emotional distress '"does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."'" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.)

The legitimate exercise of creditor rights (up to and including the commencement and completion of foreclosure proceedings) cannot be classified as outrageous behavior. (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1009.) Neither can taking a "'hard line'" during negotiations with a debtor in default. (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 479, 486, overruled on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1176, 1182.) A denial of a loan modification, even one rejecting the death of a couple's son as an adequate hardship to qualify for the modification, is insufficient to support an intentional infliction of emotional distress cause of action. (*Lesley v. Ocwen Financial Corp.* (C.D.Cal., Mar. 13, 2013, No. SA CV 12–1737–DOC) 2013 U.S. Dist. Lexis 35056.)

In their evidentiary submissions, defendants negated allegations that they engaged in extreme and outrageous conduct. Plaintiffs defaulted on their secured loan and have not made a payment since 2008. Bank of America processed every request for a loan modification submitted by plaintiffs from 2007 to the date of the summary judgment hearing. Bank of America offered two modifications to plaintiffs that would have allowed plaintiffs to stay in their home for the term of the loan by paying interest only. Defendants did not actually complete the foreclosure process. Bank of America continued to entertain repetitive modification requests, even after plaintiffs had sued them.

In opposing the motion, plaintiffs pointed out (mostly by referring to allegations in their complaint) that defendants stood in the way of plaintiffs obtaining their objective — a loan modification consistent with their subjective sense of what was fair. Bank of America did not approve all of plaintiffs' requests for loan modifications, and the modifications that were approved did not reduce the interest rate. Bank of America did not always act with promptness and efficiency in servicing plaintiffs' account, particularly with regard to the modification requests. While plaintiffs no doubt suffered frustration and anxiety in their efforts to rewrite the contract they agreed to in 2005 and began breaching almost immediately thereafter, a lender is entitled to reject a proposal for a loan modification and doing so is not beyond what is tolerated in civilized society. As such, defendants did not engage in outrageous conduct by rejecting plaintiffs' loan modification proposals. Defendants are entitled to summary adjudication of the intentional infliction of emotional distress cause of action.

19

## DISPOSITION

The court correctly granted summary judgment because defendants are entitled to judgment as a matter of law as to each of the remaining causes of action in the operative complaint. The judgment is affirmed. Defendants shall recover costs incurred on appeal.

IKOLA, J.

WE CONCUR:

ARONSON, ACTING P. J.

THOMPSON, J.

20