Filed 8/5/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| KWANG K. SHEEN, | B289003 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC631510) |
| v. | |
| WELLS FARGO BANK, N.A. | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert L. Hess, Judge. Affirmed.

Los Angeles Center for Community Law and Action, Noah Grynberg for Plaintiff and Appellant.

Kutak Rock, Jeffrey S. Gerardo, and Steven M. Dailey for Defendant and Respondent.

———————————————

Homeowners in mortgage trouble may try to negotiate a better deal. If mortgage modification negotiations fail and the borrower falls behind, the lender may foreclose, sell the house, and evict the homeowner. In a nutshell, this happened to borrower Kwang Sheen with his lender Wells Fargo Bank, N.A. (Wells). Sheen sued Wells in *tort* for negligent mortgage modification and other claims. The trial court sustained Wells's demurrer, partly because Wells did not owe Sheen a duty in *tort* during *contract* negotiation.

The issue of whether a tort duty exists for mortgage modification has divided California courts for years. The California Supreme Court has yet to resolve this division. We must take sides.

We join with the old rule: no tort duty during contract negotiations. Our small contribution to this extensive debate is to use the general approach of the recent Supreme Court decision in *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391 (*Gas Leak Cases*). The *Gas Leak Cases* decision was not about mortgage modifications, but it gives us guiding sources of law about whether to extend tort duties when, as here, there is no personal injury or property damage. Seeking wisdom, the Supreme Court considered decisions from other states as well as the Restatement of Torts. We do likewise.

These sources of law decisively weigh against extending tort duties into mortgage modification negotiations. The majority of other states are against it, and the most recent Restatement counsels against this extension because other bodies of law—breach of contract, negligent misrepresentation, promissory estoppel, fraud, and so forth—are better suited to handle contract negotiation issues. We therefore affirm.

# I

We recount Sheen's allegations from the operative pleading: his second amended complaint, which was skillfully drafted and is 26 pages long. Sheen attached no documents to this unverified complaint. In the trial court, able counsel represented Sheen. The same counsel appeared for oral argument in this court.

Sheen's complaint tells of a homeowner who borrowed money on his house three times, defaulted on all three loans after the subprime meltdown, sought loan modifications, declared bankruptcy, and emerged from bankruptcy. In the end, Sheen lost his house to foreclosure.

The complaint begins with Sheen's home purchase in 1998. Sheen got a $500,000 loan secured by a deed of trust. This first loan is not at issue here.

In 2005, Sheen obtained two junior loans from Wells, in the amounts of $167,820 and $82,037. Sheen had financial troubles during the 2008 financial crisis and missed payments on the second and third loans. In September 2009, Wells recorded a notice of default on the second loan. The beneficiary of the first loan recorded a notice of default a few months later.

Sheen sought to modify all his home loans. Sheen's previous representative contacted Wells in January 2010 seeking forbearance and modifications to the second and third loans. Sheen himself submitted loan modification requests about both loans on January 29, 2010.

Wells sent Sheen two letters on March 17, 2010. One letter concerned the second loan. It stated Wells was accelerating Sheen's payments due under the second loan. Sheen alleges this letter led him to believe his mortgages were converted into unsecured loans because the letter stated Wells may "plac[e] your account with an outside collection agency." Around this time, a Wells representative

3

called Sheen's wife and told her there would be no foreclosure sale. Instead, the representative allegedly explained, Wells was simply trying to recover money through standard collections practices.

Sheen received an additional letter from Wells on April 23, 2010 concerning the second loan in which Wells offered to charge off 50% of the balance if Sheen and Wells could come to a satisfactory arrangement. This letter reinforced Sheen's belief Wells had converted his mortgage into an unsecured loan because the letter did not explicitly mention a possible foreclosure sale.

In November 2010, Wells sold Sheen's defaulted second loan in the secondary market for distressed mortgage debt. After the second loan passed through two investment entities, Mirabella Investments Group, LLC (Mirabella) ultimately bought it in November 2013.

Meanwhile, Argent Mortgage Company, LLC, the holder of the first loan, recorded a notice of trustee sale in April 2012. Sheen succeeded in modifying this loan and Argent rescinded its notice of default in August 2013.

Wells ultimately cancelled the third loan in March 2014.

Mirabella moved forward on the second loan and recorded a notice of default in April 2014. Sheen began making modification requests to Mirabella in August 2014, but Mirabella did not tell Sheen whether it would modify this loan. Instead Mirabella wrote Sheen in August 2014 stating it sold its servicing rights for the second loan to FCI Lender Services, LLC (FCI).

Sheen made another modification request directly to FCI that month, but it rejected the application because Sheen had too little income. Ten days later Sheen filed for Chapter 7 bankruptcy relief. Sheen made two more requests for modification while his bankruptcy was pending. FCI rejected each of these applications, again citing Sheen's low income.

4

Sheen made a third modification request in October 2014 with the assistance of a legal aid society representative. FCI allegedly informed this representative it considered Sheen's second loan to no longer be in "active foreclosure." Sheen also contacted Mirabella directly. Mirabella allegedly told Sheen and his wife it would consider modification in lieu of foreclosure.

The bankruptcy court dismissed Sheen's bankruptcy case on October 24 and vacated the bankruptcy stay. Sheen got a phone call five days later that his home would be sold that day. Surprised, Sheen immediately followed up with FCI, which confirmed the news.

Mirabella bought Sheen's home at the auction later that day. Mirabella then sold the home to Equity Investments Group, Inc. and Compass Alternative Investments, LLC. Sheen then lost an unlawful detainer action.

## II

We describe this case's procedural posture.

Sheen sued Wells and others in 2016. Sheen's first count was for negligence. He alleged Wells owed him a duty of care to process, review, and respond carefully and completely to the loan modification applications he submitted to Wells. Additionally, Wells allegedly owed him a duty to refrain from engaging in unfair and offensive business practices that confused Sheen and prevented him from pursuing all options to avoid foreclosure. Sheen alleged Wells breached its duty by failing to respond to his applications, by sending two letters suggesting loans had been modified and his house would not be sold, by phoning his wife to say there would be no foreclosure sale of his home, by confirming Sheen's interpretation of these letters with a further letter that read like it was sent in connection with an unsecured debt rather than a

5

secured mortgage loan, and by assigning a loan without notifying the assignor that Sheen's modification application was pending.

Sheen also sued Wells for intentional infliction of emotional distress, alleging Wells knew he was in a state of financial difficulty. Yet Wells failed to respond to his modification application, sent him misleading letters, and suggested to Sheen's wife the house would not be sold in foreclosure. Wells further confirmed Sheen's understanding of the letter with a further letter that made no mention of a foreclosure sale. These alleged actions, Sheen claimed, stated a claim for intentional infliction of emotional distress.

Sheen's final claim against Wells was for violating the unfair competition law, Business & Professions Code section 17200 et seq. (section 17200). Sheen alleged that, under section 17200, Wells's acts violated the laws against negligence and intentional infliction of emotional distress. Sheen claimed Wells's conduct had been unfair because it was immoral, unethical, and unscrupulous. Finally, Sheen alleged Wells's conduct was fraudulent because it was likely to have deceived members of the public.

Wells demurred to Sheen's second amended complaint.

Sheen's counsel stressed to the trial court that "we are not alleging fraud, and we are not alleging breach of contract . . . ." Rather, Sheen limited his claims against Wells to three counts described above: negligence, intentional infliction of emotional distress, and violations of section 17200.

The trial court sustained Wells's demurrer against Sheen's three causes of action without leave to amend. The court dismissed the negligence cause of action because Sheen had not pleaded facts supporting a tort duty of care by Wells to Sheen regarding loan modification. The court dismissed the intentional infliction of emotional distress claim for failure to plead outrageous conduct.

6

And the court dismissed Sheen's section 17200 claim for want of an underlying claim. The court entered judgment for Wells.

Wells's successful demurrer did not affect Sheen's suit against other defendants, which proceeded. Sheen appealed the trial court's judgment for Wells. Wells is the lone defendant in this court, and Sheen is the lone plaintiff.

III

The trial court was right to sustain the demurrer.

We independently review an order dismissing a complaint. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1500–1501.)

We begin by noting the claims Sheen did *not* bring. Sheen did not sue Wells for common law:

1. Breach of contract,
2. Negligent misrepresentation,
3. Promissory estoppel, or
4. Fraud.

Neither did Sheen claim a statutory breach of the following:

1. California Foreclosure Prevention Act (Civ. Code, § 2924 et seq.),
2. California Homeowner Bill of Rights (Civ. Code, § 2920 et seq.),
3. Perata Mortgage Relief Act (Civ. Code, § 2923.5),
4. Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.),
5. Home Affordable Modification Program (12 U.S.C. § 5201 et seq.), or
6. Truth in Lending Act (15 U.S.C. § 1601 et seq.).

These omissions were well counseled and not inadvertent. During oral argument on the demurrer, Sheen's counsel—an expert in this field of law—stressed to the trial court the suit's limited and precisely targeted nature. The implication is Sheen did not attempt

7

these other theories because, in his attorney's estimation, they did not or could not offer him the type of relief he wanted. So Sheen turned to common law negligence to fill the gap.

Sheen told the trial court he was bringing his negligence claim on an *Alvarez* and *Daniels* theory. (See *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941 (*Alvarez*); *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150 (*Daniels*).)

We respectfully disagree with *Alvarez* and *Daniels*. In our view, the trial court correctly sustained Wells's demurrer because a lender does not owe a borrower a tort duty of care during a loan modification negotiation.

The 2014 *Alvarez* decision sharpened a conflict in California's state courts. *Alvarez* ruled lenders *do* owe borrowers a duty of care in tort during mortgage modification negotiations. The *Alvarez* opinion rejected the 2013 decision in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 67 (*Lueras*), which held a lender does *not* owe a borrower a common law duty "to offer, consider, or approve" a loan modification. (See also *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 ["Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'"].)

The *Alvarez* opinion stressed that "the bank holds 'all the cards'" and that borrowers are captive, with virtually no bargaining power. (*Alvarez, supra*, 228 Cal.App.4th at p. 949.) The opinion noted the "moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification." (*Ibid*.) The decision reasoned recent legislation demonstrated "'a rising trend to require lenders to deal reasonably with borrowers in default to try to

8

effectuate a workable loan modification.'" (*Id.* at p. 950.) In careful detail, *Alvarez* explained why it took a view conflicting with *Lueras.* (*Id.* at pp. 947–951.)

This conflict persists. The *Daniels* court followed *Alvarez,* while other courts have aligned with *Lueras.* The unpublished Fourth Appellate District decision in *Lacken v. Select Portfolio Servicing, Inc.* (Feb. 20, 2018 G053997) 2018 Cal.App.Unpub. Lexis 1163, pp. *18–*22, 2018 WL 948198, pp. *6–*8, reviewed the debate and continued the rift, as do numerous federal decisions. (See *Anderson v. Deutsche Bank Nat. Trust Co. Americas* (9th Cir. 2016) 649 Fed.Appx. 550, 552; *Deschaine v. IndyMac Mortgage Services* (9th Cir. 2015) 617 Fed.Appx. 690, 693; *Hackett v. Wells Fargo Bank* (C.D. Cal. Mar. 5, 2018, 2:17-CV-7354) 2018 U.S.Dist. Lexis 38412, pp. *22–*26, 2018 WL 1224410, pp. *8–*9; *Cruz v. Freedom Mortgage Corporation* (C.D.Cal. May 3, 2018, CV 18-1438) 2018 WL 6118532, pp. *5–*6.)

Our list of cases in conflict is hardly exhaustive but the extent and duration of this conflict shows the governing test does not yield predictable and uniform results.

That governing test stems from *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*). How one views this test apparently depends on the beholder. (Compare *Alvarez, supra,* 228 Cal.App.4th at pp. 948–951 [*Biakanja* dictates duty] with *Lueras, supra,* 221 Cal.App.4th at p. 67 [*Biakanja* dictates no duty].) Our view is that *Lueras* and allied opinions correctly analyzed the *Biakanja* factors.

Rather than rely on this debatable test alone, we seek added certainty by turning to the latest word from the California Supreme Court in its *Gas Leak Cases* opinion. This case concerned the issue of tort duty, albeit not in the mortgage modification context. Rather, *Gas Leak Cases* arose when a utility accidentally let methane escape, which caused nearby businesses to lose money.

9

Like Sheen, these businesses suffered neither personal injury nor property damage. Their losses were purely economic. The question in *Gas Leak Cases* was whether the utility owed these businesses a tort duty of care. The High Court said no. The economic loss rule means there is no such tort duty.

The *Gas Leak Cases* quoted a legal test called the "*Rowland* factors" that derived from and is nearly identical to the *Biakanja* test. (See *Gas Leak Cases, supra,* 7 Cal.5th at p. 398 [citing *Rowland v. Christian* (1968) 69 Cal.2d 108, 113, which in turn cited *Biakanja*]; *id.* at p. 400 [analyzing and applying *Biakanja*]; *id.* at p. 401 [the *Biakanja* test involved "a subset of the *Rowland* factors"].) But the High Court eschewed "rote application of these separate so-called *Rowland* factors" and instead took a comprehensive look at the total considerations at play. (*Id.* at p. 399.)

One fundamental consideration was that economic losses flowing from "a financial transaction gone awry" are "'primarily the domain of contract and warranty law or the law of fraud, rather than of negligence.'" (*Gas Leak Cases*, *supra*, 7 Cal.5th at p. 402.) Here we have a financial transaction gone awry and nothing more: Sheen suffered neither personal injury nor property damage.

The *Gas Leak Cases* decision also considered the views of other jurisdictions and of the Restatement of Torts. (*Gas Leak Cases*, *supra*, 7 Cal.5th at pp. 403–407.) We follow this lead.

Decisions from other jurisdiction form a consensus that "cuts sharply against imposing a duty of care to avoid causing purely economic losses in negligence cases like this one . . . ." (*Gas Leak Cases*, *supra*, 7 Cal.5th at p. 403.)

Courts in at least 23 states have refused to impose tort duties on lenders about loan modifications. (See *Prickett v. BAC Home Loans* (N.D.Ala. 2013) 946 F.Supp.2d 1236, 1244–1245 [applying Alabama law]; *Miller v. Bank of New York Mellon* (Colo.Ct.App.

10

2016) 379 P.3d 342, 345–348; *Burdick v. Bank of America, N.A.* (S.D.Fla. 2015) 99 F.Supp.3d 1372, 1377–1378 [applying Florida law]; *Chung v. JPMorgan Chase Bank, N.A.* (N.D.Ga. 2013) 975 F.Supp.2d 1333, 1344–1346 [applying Georgia law]; *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, 567–568 [applying Illinois law]; *Jaffri v. JPMorgan Chase Bank, N.A.* (Ind.Ct.App. 2015) 26 N.E.3d 635, 638; *Legore v. OneWest Bank, FSB* (D.Md. 2012) 898 F.Supp.2d 912, 918–919 [applying Maryland law]; *Afridi v. Residential Credit Solutions, Inc.* (D.Mass. 2016) 189 F.Supp.3d 193, 199 [applying Massachusetts law]; *Polidori v. Bank of America, N.A.* (E.D.Mich. 2013) 977 F.Supp.2d 754, 763–764 [applying Michigan law]; *Wivell v. Wells Fargo Bank, N.A.* (8th Cir. 2014) 773 F.3d 887, 900 [applying Missouri law]; *Anderson v. ReconTrust Company, N.A.* (Mont. 2017) 390 Mont. 12, 20; *McGee v. CitiMortgage* (D.Nev. May 31, 2013, 2:12-CV-2025) 2013 U.S.Dist. Lexis 76675, pp. *16–*17, 2013 WL 2405301, p. *6 [applying Nevada law]; *Schaefer v. Indymac Mortgage Services* (1st Cir. 2013) 731 F.3d 98, 103–107 [applying New Hampshire law]; *Patetta v. Wells Fargo Bank, N.A.* (D.N.J. Sep. 10, 2009, 3:09–CV–2848) 2009 U.S.Dist. Lexis 82338, pp. *30–*32, 2009 WL 2905450, p. *8 [holding no fiduciary duty exists between borrowers and lenders that would support non-contractual liability under New Jersey law]; *Dooley v. Wells Fargo Bank, Nat. Ass'n* (S.D.Ohio 2013) 941 F.Supp.2d 862, 866–867 [applying Ohio law]; *Medici v. JP Morgan Chase Bank, N.A.* (D.Or. Jan. 15, 2014, 3:11–CV–00959) 2014 U.S.Dist. Lexis 4928, pp. *9–*10, 2014 WL 199232, pp. *3–*4; *Bordoni v. Chase Home Finance LLC* (E.D.Pa. 2019) 374 F.Supp.3d 378, 384–386 [applying Pennsylvania law]; *Henderson v. Wells Fargo Bank, N.A.* (N.D.Tex. 2013) 974 F.Supp.2d 993, 1010–1012 [applying Texas law]; *Needham v. Fannie Mae* (D.Utah 2012) 854 F.Supp.2d 1145, 1153 [applying Utah law]; *Parks v. BAC Home*

*Loan Servicing, LP* (E.D.Va. 2011) 825 F.Supp.2d 713, 716 [applying Virginia law]; *Srok v. Bank of Am.* (E.D.Wis. Nov. 6, 2015, 15-CV-239) 2015 U.S.Dist. Lexis 151025, pp. *17–*21, 2015 WL 6828078, pp. *7–*8 [applying Wisconsin law]; *McNeely v. Wells Fargo Bank, N.A.* (S.D.W.Va. Dec. 10, 2014, 2:13-CV-25114) 2014 U.S.Dist. Lexis 170784, pp. *12–*20, 2014 WL 7005598, pp. *5–*7; *Powell v. Ocwen Loan Servicing, LLC* (D.Wyo. Aug. 7, 2014, 14-CV-113) 2014 U.S.Dist. Lexis 187163, pp. *12–*16, 2014 WL 11498232, pp. *5–*6 [applying Wyoming law].)

This 23-state bloc is the dominant position, but there may be a contrary minority view. An unpublished 2014 federal district court opinion reported two dissenting cases: one unpublished decision from Arizona and another from Mississippi. (See *Powell v. Ocwen Loan Servicing, LLC*, *supra*, 2014 U.S.Dist. Lexis 187163, p. *13, 2014 WL 11498232, pp. *5–*6 [citing *McIntosh v. IndyMac Bank, FSB* (D.Ariz. Jan. 10, 2013, CV-11-1805) 2013 U.S.Dist. Lexis 3959, pp. *6–*7, 2013 WL 135315, p. *2; *Montgomery v. CitiMortgage, Inc.* (S.D.Miss. 2013) 955 F.Supp.2d 640, 649–650 (*Montgomery*)].)

So perhaps Arizona and Mississippi support *Alvarez*. We are unsure.

The pertinent law in Arizona appears to be a bit of a mixed bag. (Compare *Snyder v. HSBC Bank, USA, N.A.* (D.Ariz. 2012) 913 F.Supp.2d 755, 775–776 [noting relevant Arizona law "is not well-settled"] with *id.* at p. 776 [concluding bank owed no duty to borrower] and *Zazueta v. Nationstar Mortg., LLC* (D.Ariz. Apr. 1, 2014, (CV-13-1415), 2014 U.S.Dist. Lexis 189627, pp. *16–18, 2014 WL 12527708, pp. *6–*7 [apparently holding no tort duty exists between a financial institution and a borrower].)

We have similar uncertainty about the law of Mississippi. (Compare *Poppelreiter v. GMAC Mortg., LLC* (N.D.Miss. Dec. 7,

2011, 1:11CV008) 2011 U.S.Dist. Lexis 140957, pp. *8–*9, 2011 WL 6100440, p. *3 [relationship between a mortgagor and mortgagee is not a fiduciary one but rather an arms-length business transaction involving a normal debtor-creditor relationship] with *Montgomery*, *supra*, 955 F. Supp.2d at 649 [under Mississippi law a negligence claim may be founded on the breach of a legal duty arising from a contract between parties].)

Our uncertainty about Arizona and Mississippi does not matter. Whether the tally is 23 to zero or 23 to two, the overwhelming supermajority of states disagree with *Alvarez*.

The dominant position is there is no tort duty during mortgage modification negotiations. This consensus is "a striking degree of unanimity." (*Gas Leak Cases*, *supra*, 7 Cal.5th at p. 407.) It weighs against *Alvarez*.

Turning next to the Restatement of Torts, it supports *Lueras* and opposes *Alvarez*, as we explain.

There is "[l]ittle wonder" the Restatement "takes the dominant view. Although acknowledging that '[d]uties to avoid the unintentional infliction of economic loss' exist in certain recognized circumstances, the latest Restatement provides that there is 'no general duty to avoid the unintentional infliction of economic loss on another.' (Rest.3d, Torts, Liability for Economic Harm (Tent. Draft. No. 1, Apr. 4, 2012) § 1 (Restatement T.D. 1).)" (*Gas Leak Cases*, *supra*, 7 Cal.5th at p. 407.)

Specifically, the most recent Restatement explains there can be no liability in tort for economic loss caused by negligence in the performance or *negotiation* of a contract between its parties. (Rest.3d Torts, Liability for Economic Harm (Tent. Draft No. 1, Apr. 4, 2012) § 3.) Certain exceptions exist but do not apply here.

The Restatement gives its rationale. "When a party's negligence in performing or negotiating a contract causes economic

13

loss to the counterparty, remedies are determined by other bodies of law:  principally the law of contract, though sometimes also the law of restitution or relevant statutes.  The law of contract and the law of restitution have been developed for the specific purpose of allocating economic losses that result from the negotiation and performance of contracts.  They provide a more extensive and finely tuned apparatus for the purpose than the law of torts, which has developed primarily to address injuries that occur outside contractual relationships.  [¶]  [This approach] serves several purposes.  When a dispute arises, the rule protects the bargain the parties have made against disruption by a tort suit.  Seen from an earlier point in the life of a transaction, the rule allows parties to make dependable allocations of financial risk without fear that tort law will be used to undo them later.  Viewed in the long run, the rule prevents the erosion of contract doctrines by the use of tort law to work around them.  The rule also reduces the confusion that can result when a party brings suit on the same facts under contract and tort theories that are largely redundant in practical effect."  (Rest.3d Torts, Liability for Economic Harm (Tent. Draft No. 1, Apr. 4, 2012) § 3, com. b., p. 22.)

The Restatement rebuts factors that may have contributed to *Alvarez's* result.  "Pressure to find a tort claim arises because the stakes are high and the plaintiff's position is sympathetic . . . .  But if denying relief to the plaintiff seems to produce an injustice on those grounds, a better response is to reconsider the application of . . . the other doctrines of contract law that are responsible for the result.  Using tort law to bypass those doctrines weakens them and retards their development.  It also interferes with the ability of others to make reliable agreements in the future.  In the alternative, a result unappealing on its equities may call for a statutory solution.  Statutes can impose responsibility on sellers for

14

certain risks without distorting widely applicable legal principles to reach the desired outcome. . . . When two parties negotiate over a contract, the amount of care they are expected to show for each other's interests will often be unclear or significantly less than the care expected in a situation involving strangers or the risk of physical injury. That is among the reasons why the duties of care between parties who negotiate contracts are not governed by the law of tort." (Rest.3d Torts, Liability for Economic Harm (Tent. Draft No. 1, Apr. 4, 2012) § 3, com. d., pp. 27–28.)

The Restatement is definitive: it "eliminates tort claims based on a defendant's negligent statements of intent to make a contract, predictions about the likelihood of a contract, or mistaken suggestions that a contract has been formed." (Rest.3d Torts, Liability for Economic Harm (Tent. Draft No. 1, Apr. 4, 2012) § 3, com. e., p. 29.)

"Detailed doctrines in the law of contract, of restitution, and of estoppel have developed to provide relief in such cases where necessary. If those bodies of law fall short, the appropriate response again is to reform them, not to use the law of tort to supply their deficiencies." (Rest.3d Torts, Liability for Economic Harm (Tent. Draft No. 1, Apr. 4, 2012) § 3, com. e., p. 29.)

In sum, the consensus of other jurisdictions and of the Restatement cuts against *Alvarez* and similar decisions.

Logic points to the same conclusion: "it is strange to impose a negligence duty on lenders to carefully review modification applications when there is no such tort duty to *approve* applications as a result of that review." (*Carbajal v. Wells Fargo Bank, N.A.* (C.D.Cal. Apr. 10, 2015, CV 14-7851) 2015 U.S.Dist. Lexis 47918, p. *15, 2015 WL 2454054, p. *6, affd. (9th Cir. 2017) 697 Fed.Appx. 555, original italics.)

Finally, the *Gas Leak Cases* opinion noted the ability of legislatures to craft remedies beyond the ken of courts. Legislatures, both state and federal, have responded to problems in the mortgage modification field. "[T]hrough the democratic process, the Legislature can bring to bear a mix of expertise while considering competing concerns to craft a solution in tune with public demands." (*Gas Leak Cases*, *supra*, 7 Cal.5th at p. 413.)

In the mortgage modification field, legislatures have been active, and their results have been designedly limited in time and scope. Neither legislators nor borrowers (nor others) want to increase mortgage costs or to limit the availability of mortgages and mortgage modifications. (Cf. *Daniels*, *supra*, 246 Cal.App.4th at p. 1183 [absent a duty in the first place to modify a loan or even to evaluate such an application, imposing negligence liability for the mishandling of loan modification applications could discourage lenders from offering modification].)

After fair notice, legislators can hear from disinterested experts and from all affected sectors before acting. After hearings and reports, legislatures can craft broadly acceptable compromises and can enact limited and experimental pilot programs. Legislatures can adjust policy swiftly in the face of change and experience.

Courts can do none of these things well. The complexity and importance of financial markets gives special force to the law of unintended consequences.

We conclude we should follow *Lueras*, not *Alvarez*. Under this view, the trial court properly dismissed Sheen's negligence count because a lender does not owe a borrower a common law duty to offer, consider, or approve a loan modification.

Sheen's other claims are meritless. We agree with the trial court the intentional infliction of emotional distress claim is

16

frivolous.  Wells's alleged responses to Sheen's loan modification requests may have been confusing, confused, tardy, or flat wrong, but this alleged conduct was not so extreme as to exceed all bounds of what a civilized society usually tolerates.  (*Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 832.)

The trial court also was right to dismiss Sheen's section 17200 claim.  (See, e.g., *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* (2018) 28 Cal.App.5th 923, 950.)

## DISPOSITION

The judgment is affirmed.  Wells is entitled to its costs on appeal.


WILEY, J.


WE CONCUR:



BIGELOW, P. J.



STRATTON, J.