Filed 01/22/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| EARLINE WILLIAMS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>21st MORTGAGE CORPORATION,<br><br>        Defendant and Respondent. | A153307<br><br>(Contra Costa County<br>Super. Ct. No. CIVMSC1700361) |

After defendant 21st Mortgage Corporation foreclosed on her home, plaintiff Earline Williams brought this action alleging defendant interfered with her rights under California law, breached its contract with her, acted negligently, and committed elder financial abuse.  In particular, plaintiff alleges that she should have been able to avoid foreclosure by tendering the amount then in default (Civ. Code, § 2924c),[1] and that it was unlawful for defendant also to demand payment on amounts subject to a confirmed bankruptcy plan.  The trial court sustained defendant's demurrer without leave to amend and entered judgment accordingly.  Because we agree with plaintiff on the application of section 2924c, we shall reverse the judgment.

## I.  BACKGROUND

### A.  The Allegations of the Complaint

The operative first amended complaint alleges as follows:  Plaintiff bought a home in Richmond, California, in 1973.  She refinanced her mortgage in 2005.  In 2015, defendant acquired the beneficial interest in the deed of trust securing her loan and became the servicer of the loan.

---

[1] All undesignated statutory references are to the Civil Code.

Plaintiff applied for a loan modification in the summer of 2015.  In April 2016, defendant notified her that her application had been denied.  Plaintiff had not been allowed to make any mortgage payments in the interim, and she owed approximately $20,000 in arrears.

On June 22, 2016, plaintiff filed a Chapter 13 bankruptcy petition.  Her bankruptcy was confirmed on September 29, 2016.  Under the terms of her plan, she was required to make monthly payments to the bankruptcy trustee of $97 per month until June 1, 2017 and $387 per month thereafter, which covered her pre-petition mortgage arrears of $20,000.  She was also making her regularly scheduled monthly mortgage payments of $1,025.73 per month.

Plaintiff made her payments under the bankruptcy plan, but failed to make her regular monthly mortgage payment in October 2016.  On November 3, 2016, defendant filed a motion for relief from the automatic bankruptcy stay in the United States Bankruptcy Court of the Northern District of California.  Plaintiff and defendant reached an agreement (a "Stipulation for Adequate Protection," approved by the bankruptcy court on November 18, 2016) that she would pay the October and November 2016 payments over a period of months beginning in January 2017.

Plaintiff later received a letter from defendant telling her she would have to make a mortgage payment by December 26, 2016.  On December 22, 2016, she tried unsuccessfully to make a payment over the phone.  She contacted defendant, spoke with a representative, David Brown, and made both her December 2016 and January 2017 payments over the phone.  Brown told her the money would be removed from her account within the hour, and plaintiff received confirmation that the payment had been submitted to defendant that day.  However, defendant did not remove the money from plaintiff's account immediately.  Plaintiff contacted defendant and spoke again with Brown, who assured her the funds had been received.  At the time she made the payment, she had sufficient funds in her account to cover it.  On January 10, 2017, however, she received notice that the payment had not gone through.

2

Plaintiff tried to reach Brown on January 13, 2017, but he was unavailable. She spoke with an employee named Amanda, who told her she had to submit at least the December 2016 payment immediately, so it would be received January 16. Plaintiff sent the December 2016 payment on January 15. There is no allegation she submitted the January 2017 payment at that time.

Defendant obtained an order granting relief from the automatic bankruptcy stay on January 17, 2017. Plaintiff contacted defendant but was unable to reach Brown. On January 23, 2017, she spoke with Brown, who told her that defendant would not accept the January 2017 payment because the matter had been referred to the legal department.

Plaintiff spoke with someone named Maria in the legal department. She told Maria she had her October, November, and January payments in hand and could pay back her post-petition arrears immediately. Maria told plaintiff that defendant would not accept the January 2017 payment. She said plaintiff owed $23,400 and defendant would sell the house if it did not receive that amount by January 26. Plaintiff obtained a cashier's check for $3,078 to cover post-petition arrears (i.e., the amount of the October and November 2016 and January 2017 payments), but defendant did not accept the payment, instead telling her that her home would be sold on January 27, 2017. On January 27, 2017, plaintiff filed a "skeleton" Chapter 13 petition in the bankruptcy court in an unsuccessful attempt to stop the foreclosure proceedings.

At the time of the bankruptcy sale, plaintiff's home was worth approximately $550,000, but defendant sold the home for $403,000, depriving her of nearly $150,000 in equity.

Based on these general allegations, plaintiff asserts six causes of action. The first is for violation of section 2924c, in that defendant demanded from plaintiff an amount more than necessary to reinstate her loan. The second is for violation of section 2923.7, which imposes an obligation on a mortgage servicer to provide a single point of contact when a borrower requests a foreclosure prevention alternative. The third is for breach of contract, based on the parties' November 2016 "Stipulation for Adequate Protection," in which they agreed that plaintiff would repay the October and November 2016 payments

3

over a period of six months beginning in January 2017. The fourth is for negligence per se, based on the alleged inability of her "single point of contact" (§ 2923.7, subd. (a)) to provide accurate information about the amount needed to reinstate the loan. The fifth asserts that defendant's actions constitute elder financial abuse. (Welf. & Inst. Code, § 15610.30, subd. (a)(1).) The sixth asserts that they constitute unfair competition. (Bus. & Prof. Code, § 17200.)

## B. The Demurrer

Defendant demurred to the first amended complaint. The demurrer was supported by a request for judicial notice, which the trial court granted. The judicially noticed documents include a November 18, 2016 order of the bankruptcy court approving the November 17, 2016 Stipulation for Adequate Protection. The stipulation provided that plaintiff would cure her post-petition mortgage arrearages by tendering to defendant an additional $518.28 per month beginning on January 1, 2017, and continuing on the first day of each month through June 2017. It also provided that, beginning December 1, 2016 and continuing on the first day of each month, plaintiff would tender her regular mortgage payment, currently $1,025.73 per month, to defendant.

The judicially noticed documents include plaintiff's confirmed bankruptcy plan, which recited that the secured claim for $20,000 was "delinquent and other than the curing of any arrears, [is] not modified by this plan." The documents also include the January 17, 2017 bankruptcy court order terminating the stay, which recited that the court had approved the Stipulation for Adequate Protection, and that defendant had "filed its Declaration evidencing Debtor's breach of the terms of that Order, and the Debtor [had] failed to cure said default." The order lifted the automatic stay concerning plaintiff's home and authorized defendant to "take any and all actions under its Note and Deed of Trust, and applicable to law [*sic*], to foreclose upon and take possession of the Property." Plaintiff moved in the bankruptcy court to vacate the order granting relief from the stay on January 24, 2017, based on her efforts to make a payment in December 2016, her belief that the payment had gone through, and her current willingness to tender the

4

October and November 2016 and January 2017 payments.  The bankruptcy court denied the motion.

The trial court sustained the demurrer without leave to amend as to all six causes of action, based primarily on its conclusion that the bankruptcy court had exclusive jurisdiction over the causes of action plaintiff asserts.  Plaintiff appeals from the ensuing judgment of dismissal.

## II.  DISCUSSION

### A.  Standard of Review

In reviewing a trial court's action in sustaining a demurrer, we review the complaint de novo to determine whether the facts alleged are sufficient to state a cause of action.  (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.)  " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed." [Citation.] . . . [W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' " (*Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1781 (*Sanchez*).)  "This abuse of discretion is reviewable on appeal 'even in the absence of a request for leave to amend.' " (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970–971; see Code Civ. Proc., § 472c, subd. (a).)  Plaintiff has the burden to show there is a reasonable possibility the complaint's defects can be cured by amendment.  (*Sanchez*, *supra*, 21 Cal.App.4th at p. 1781.)

### B.  Section 2924c—First and Sixth Causes of Action

The first cause of action is for violation of section 2924c, which authorizes a mortgagor to avoid a foreclosure sale and reinstate a loan by paying "the entire amount due, at the time payment is tendered, with respect to (A) *all amounts of principal [or]*

5

*interest* . . . actually known by the beneficiary to be, and *that are, in default* and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, [and] (B) all amounts in default on recurring obligations not shown in the notice of default, . . . *other than the portion of principal as would not then be due had no default occurred*, and thereby cure the default theretofore existing . . ." (§ 2924c, subd. (a), italics added.)

The issue before us is whether defendant violated this provision in demanding not only the approximately $3,000 of post-petition arrears, but also the $20,000 subject to the bankruptcy plan, as to which plaintiff was up-to-date on her payments, in order to avoid foreclosure. Defendants demurred on the ground that plaintiff did not allege she tendered the full amount due under her loan, including the pre-petition $20,000.

Plaintiff alleges she made her payments each month under the confirmed bankruptcy plan, which modified her pre-petition obligation of $20,000 as to "the curing of any arrears" by requiring her to make monthly payments to the bankruptcy trustee of $97 until June 2017 and $387 thereafter. She contends section 2924c required her to tender only the amounts in which she was in default under the terms of the confirmed plan in order to avoid foreclosure, and that amount did not include the $20,000 as to which she was making the payments to the trustee.

We must decide, then, whether amounts on which payments are being timely made pursuant to a confirmed bankruptcy plan are "in default" for purposes of section 2924c. No court appears to have addressed this precise issue.

We conclude such amounts are not currently in default. Section 2924c makes clear that in order to avoid foreclosure and reinstate a mortgage, a mortgagor need tender only the amount currently in default, and that this amount does not include "the portion of principal as would not then be due had no default occurred." (§ 2924c, subd. (a); see *Taniguchi v. Restoration Homes LLC* (2019) 43 Cal.App.5th 478, 490 (*Taniguchi*) [after loan modification, borrowers may avoid foreclosure under § 2924c by curing "precipitating default," i.e., the missed *modified* monthly payments].) The bankruptcy plan altered plaintiff's obligations to defendant such that the prepetition arrears were not

6

"then . . . due." That is because a confirmed Chapter 13 plan is "a contract between the debtor and creditors." (*In re Richardson* (Bankr. S.D.Cal. 1996) 192 B.R. 224, 228; accord *Miller v. Ameriquest Mortg. Co. (In re Laskowski)* (Bankr. N.D.Ind. 2008) 384 B.R. 518, 534–535.) It binds both the debtor and creditor and acts as res judicata as to any issue pertaining to the plan that was or could have been litigated. (11 U.S.C. § 1327(a); *Bullard v. Blue Hills Bank* (2015) 575 U.S. 496 [135 S.Ct. 1686, 1692].) And, "in spite of relief from the automatic stay, the confirmed plan continues to bind both debtors and creditors in other respects." (*Carvalho v. Fannie Mae (In re Carvalho)* (1st Cir. 2003) 335 F.3d 45, 50–51; see *In re Binder* (Bankr. D.Colo. 1998) 224 B.R. 483, 490 ["Granting a creditor relief from the automatic stay for post-confirmation defaults is not precluded by any Code provision and is not inconsistent with [11 U.S.C.] § 1327 so long as such relief is consistent with the provisions of the confirmed plan"]; see also *FNB Bank v. Carlton (In re Carlton)* (Bankr. N.D.Ala. 2011) 2011 Bankr. LEXIS 3305, p. *11; 2011 WL 3799885, p. *3 ["[T]he remedies expressed in the mortgage that would have otherwise authorized the Bank to foreclose after default were usurped by the confirmed plan, which provided a cure of the default"].)

These authorities indicate that defendant is bound by the terms of the confirmed bankruptcy plan, which sets a payment schedule for the pre-petition arrearages. As to *those* arrearages, plaintiff was not in default. It follows that those amounts do not fall within the scope of "all amounts of principal [or] interest . . . that are, in default." (§ 2924c, subd. (a).) We do not read section 2924c to allow defendant to reach behind the default that precipitated the foreclosure to a *previous* default that was cured by an agreement for a new payment plan. (See *Taniguchi*, *supra*, 43 Cal.App.5th at p. 490.)

Rather than join this issue on the merits, defendant argues that the question of whether plaintiff was in default on her pre- and post-petition obligations was one within the exclusive jurisdiction of the bankruptcy court, and that the bankruptcy court's order terminating the automatic stay acts as res judicata on this issue. (See *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1106–1107 (*Abdallah*); see also *Gonzales v. Parks* (9th Cir. 1987) 830 F.2d 1033, 1035 (*Gonzales*) ["Filings of bankruptcy petitions

7

are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one"].)

We are unpersuaded. The Order Terminating Automatic Stay was based solely on plaintiff's default under the Stipulation for Adequate Protection, which governed only payments to cure plaintiff's default in her post-petition obligations. Neither the order nor the approved stipulation purported to modify the amounts due under the confirmed plan. Nor did the order affect the procedures required by California law before a lender may foreclose on a mortgage; rather, it recited defendant could take "any and all actions under its Note and Deed of Trust, *and applicable . . . law,*" to foreclose on the property. (Italics added.) Thus, the issue before the bankruptcy court was whether the stay should be lifted as a result of plaintiff's failure to meet her obligations under bankruptcy law, not what obligations California law imposed on defendant as it sought to foreclose on the property. Having concluded the stay was no longer appropriate, the bankruptcy court authorized defendant to proceed *subject to the requirements of applicable law*—here, a state statutory scheme that includes protections that are distinct from and unaffected by the bankruptcy case. Among them, as we have explained, state law allows a debtor to avoid foreclosure by tendering the amount currently in default.

This case is thus distinguishable from *Abdallah*. The appellants there had initiated three bankruptcy cases, which forestalled foreclosure on their property. The creditors moved successfully for relief from the automatic stay, and the property was sold in foreclosure. (*Abdallah*, *supra*, 43 Cal.App.4th at p. 1104.) The appellants brought an action in state court alleging, inter alia, that the defendants acted improperly in connection with the motion for relief from the automatic stay. (*Id*. at p. 1106.) This division concluded that those claims could have been brought in the bankruptcy court proceedings on the motion and were accordingly barred by the doctrine of res judicata. (*Id*. at pp. 1106–1107.) Their claims that the foreclosure violated the stay were also barred, because the bankruptcy court had jurisdiction over all claims alleging willful violation of the automatic stay, and the existence of this remedy was an implicit rejection

8

of state court remedies. (*Id*. at p. 1109.) The situation we face is different. The confirmed bankruptcy plan is res judicata as to the payments currently due for pre-petition arrears. The extent of the arrears that must be tendered under section 2924c to avoid a foreclosure is a question of state law that was not before the bankruptcy court.

Defendant argues, however, that the bankruptcy court necessarily decided this issue against plaintiff when it granted relief from the stay and subsequently denied plaintiff's motion to vacate the order granting relief from the stay. We disagree. The Stipulation for Adequate Protection recited that if plaintiff failed to cure a default on the post-petition arrears within ten days of notice of default, defendant could submit to the court an order terminating the automatic stay. That is precisely what happened. Plaintiff defaulted and failed timely to cure and, citing these facts, the bankruptcy court lifted the automatic stay on January 17, 2017. The complaint alleges that *after* that date—and well after the ten-day period provided for in the stipulation—plaintiff told Maria that she was prepared to pay her post-petition arrears. This record indicates the bankruptcy court's actions in lifting the automatic stay and declining to vacate its order lifting the stay were based on plaintiff's failure to cure the default of her post-petition arrears within the ten days required by the stipulation in the bankruptcy case. The requirements of California law were irrelevant to this determination. The bankruptcy court found that a stay was no longer appropriate under federal bankruptcy law under the terms of the parties' stipulation. To the extent there are implied findings, the only one relevant to this case is that plaintiff defaulted on her December 2016 payment, but that fact is undisputed here. The bankruptcy court made no findings—implied or otherwise—regarding the implications under state law of plaintiff's failed efforts to pay her post-petition arrears.

We therefore conclude the trial court erred in sustaining the demurrer to the first cause of action, for violation of section 2924c.[2]

---

[2] For the first time at oral argument, defendant asserted that (1) plaintiff's effort to cure the post-petition default was untimely under section 2924c, subdivision (e), which allows reinstatement of a default up to five business days before the date of sale; and (2) under sections 4.02 and 2.06 of the confirmed bankruptcy plan, defendant could seek

The sixth cause of action alleges that defendant's violation of section 2924c constitutes unfair competition under Business and Professions Code section 17200, which reaches "any unlawful, unfair or fraudulent business act or practice . . . ."[3]  Business and Professions Code section 17200 " ' "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 180; see *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 178 [unfair competition cause of action stands or falls depending on fate of antecedent substantive cause of action]; *Taniguchi*, *supra*, 43 Cal.App.5th at p. 490 [violation of § 2924c supports cause of action under Bus. & Prof. Code, § 17200].)

The trial court sustained the demurrer to the sixth cause of action on the ground that it fell along with the substantive allegations of which it was derivative, and defendant suggests no other basis on which to uphold the demurrer to this claim.  We have just concluded plaintiff has stated a cause of action under section 2924c, upon which she relies to state an unfair competition claim.  We accordingly conclude it was error to sustain the demurrer to the sixth cause of action as well.

## C. Single Point of Contact—Second and Fourth Causes of Action

The second cause of action is for violation of section 2923.7, which requires a mortgage servicer to establish a single point of contact when a borrower requests a

---

both pre-petition and post-petition arrears in the event of default on her plan payments. We do not consider points made for the first time at oral argument.  (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 (*Haight Ashbury*).)  In any case, we are not persuaded that these arguments would prevail where (1) plaintiff attempted to pay her December and January installments in December 2016, more than five days before the date of sale, and (2) plaintiff remained current on her payments under the plan, even as she fell behind on her monthly mortgage payments, until the bank stopped taking the money she proffered.

[3] This cause of action also refers to alleged violations of section 2924d, but it makes no allegations regarding that statute, which governs the right to reimbursement for the costs and expenses of a foreclosure.

foreclosure prevention alternative, defined as a "first lien loan modification or another available loss mitigation option." (§§ 2923.7, subd. (a); 2920.5, subd. (b).) The single point of contact (which may be an individual or a team) is responsible for communicating to the borrower the process for applying for an available foreclosure prevention alternative, coordinating receipt of necessary documents, having access to current information and personnel to "timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative," ensuring the borrower is considered for all foreclosure prevention alternatives offered by the servicer, and having access to individuals who can stop foreclosure proceedings when necessary. (§ 2923.7, subds. (b), (e).)

For purposes of section 2923.7, a "borrower" does not include an individual who has filed a Chapter 13 bankruptcy petition unless the bankruptcy court has closed or dismissed the bankruptcy case or has granted relief from a stay of foreclosure. (§ 2920.5, subds. (c)(1) & (c)(2)(C); *Colom v. Wells Fargo Home Mortg., Inc.* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 148856, *5–6.) Thus, plaintiff was not entitled to the protections of section 2923.7 until January 17, 2017, when the bankruptcy court terminated the automatic stay and authorized defendant to proceed with foreclosure.

Plaintiff alleges that between January 17, when the stay was terminated, and January 27, 2017, when her home was sold, Brown and Maria did not perform their duties as her single point of contact because they did not provide accurate information about the amount needed to reinstate the loan, instead telling her she had to pay the amounts she was already paying through her confirmed bankruptcy plan. In sustaining the demurrer to this cause of action, the trial court concluded plaintiff had "failed to intelligibly allege even a technical violation of this statute, much less a 'material' violation."

In light of our previous conclusions, we disagree with the trial court. The single point of contact was required to inform plaintiff "accurately" of the status of the foreclosure prevention alternative. Plaintiff's alleged effort to cure the default by paying the post-petition arrears may reasonably be construed as a "loss mitigation option"

11

(§ 2920.5, subd. (b)), and, in our view, she has adequately alleged that her contacts did not inform her accurately of what she had to do to prevent foreclosure. The trial court erred in sustaining the demurrer to the second cause of action.[4]

The fourth cause of action, for negligence per se, is based on defendant's alleged failure to comply with section 2923.7. The trial court's ruling on this cause of action was based not only on the theory that plaintiff had failed to state her antecedent cause of action for violating section 2923.7, but also on its conclusion that the California Homeowner Bill of Rights (Sen. Bill No. 900 (2011–2012 Reg. Sess.); Assem. Bill No. 278 (2011–2012 Reg. Sess.)) did not support common law tort causes of action. (See *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62–68 (*Lueras*); but see *Alvarez v. BAC Home Loan Servicing, LP* (2014) 228 Cal.App.4th 941, 948–949; see also *Sheen v. Wells Fargo Bank, N.A.* (2019) 38 Cal.App.5th 346, 352–353, review granted Nov. 13, 2019, S258019 [noting conflict between *Lueras* and *Alvarez*].) Plaintiff makes no effort to address this independent ground for the trial court's ruling on this cause of action, and we treat the point as forfeited. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) We therefore find no error in sustaining the demurrer to the fourth cause of action.

## D. Breach of Contract—Third Cause of Action

The third cause of action, for breach of contract, is based on defendant's breach of its alleged duty under the Stipulation for Adequate Protection to accept the payments plaintiff tendered. The stipulation, entered into and approved by the bankruptcy court, is within that court's exclusive jurisdiction. (See *Gonzales*, *supra*, 830 F.2d at p. 1035.) For that reason, the trial court properly sustained the demurrer to the third cause of action.

---

[4] Defendant argued for the first time at oral argument that section 2923.7 applies only to lenders who foreclosed on more than 175 properties in the prior year (§ 2923.7, subd. (g)), and that the complaint does not allege defendant met that standard. Oral argument is too late to raise this point for the first time (*Haight Ashbury*, *supra*, 184 Cal.App.4th at p. 1554, fn. 9), but nothing we say is intended to preclude defendant from asserting this point in an appropriate manner on remand.

### E. Elder Financial Abuse—Fifth Cause of Action

In her fifth cause of action, plaintiff alleges defendant's actions constitute elder financial abuse because defendant "used the trust and relationship with Plaintiff to sell Plaintiff's Property out from under her while Plaintiff was attempting to reinstate her loan by demanding amounts that were not owed as a condition of reinstatement."

Welfare and Institutions Code section 15610.30, subdivision (a)(1) defines " '[f]inancial abuse' " of an elder as occurring when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." A person is "deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." (*Id.*, subd. (b).) A lender does not take property for a " 'wrongful use' " by properly foreclosing on a loan, even if its actions are financially disadvantageous to the elder adult. (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 527–528 (*Stebley*); *Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 657.)[5]

The trial court sustained the demurrer to this cause of action on the ground that a valid nonjudicial foreclosure sale could not be deemed a wrongful use of the property. We have already concluded plaintiff has adequately alleged causes of action indicating this was not a valid nonjudicial foreclosure. We therefore conclude it was error to sustain the demurrer to the cause of action for elder financial abuse on this theory.

### F. Denial of Leave to Amend

Plaintiff also contends she sufficiently pled a claim for fraud or negligent misrepresentation. The first amended complaint does not expressly include such a cause

---

[5] Relying on an earlier version of the statute, defendant argues a "wrongful use" requires bad faith. (Former Welf. & Inst. Code, § 15610.30, subd. (b).) Bad faith or intent to defraud is no longer required in elder abuse cases. (*Stebley*, *supra*, 202 Cal.App.4th at pp. 527–528; Welf. & Inst. Code, § 15610.30, subd. (b).)

of action, so we understand this contention as an argument she should have been granted leave to amend her complaint expressly to allege these claims. Although we conclude the trial court erred in sustaining the demurrer to several of the causes of action, we will consider this issue on the merits, since plaintiff may seek to amend the complaint when the case returns to the trial court.

Plaintiff alleges Brown told her the December and January payments would be removed from her account within the hour and later, when she noticed the transfer had not gone through, assured her that defendant had received the funds. She contends she relied to her detriment on these representations because she could have spent the intervening weeks trying to obtain the full amount defendant ultimately demanded or seeking relief in the bankruptcy court.

Although we are skeptical that plaintiff can base a claim on her failure to petition the bankruptcy court for earlier relief, she has shown a reasonable possibility that she could state a cause of action for fraud or negligent misrepresentation based on allegations that defendant misinformed her about the amount necessary to cure the default (see *Lueras*, *supra*, 221 Cal.App.4th at pp. 68–69), that it made false assurances that it had received her funds, that these misrepresentations forestalled her from acting expeditiously to cure the default, and that she lost her home as a result.

### III.   DISPOSITION

The judgment is reversed. The matter is remanded for further proceedings consistent with this opinion. Plaintiff shall recover her costs on appeal.

14

_____
TUCHER, J.


WE CONCUR:


_____
POLLAK, P. J.


_____
BROWN, J.

Trial Court:                    Contra Costa County Superior Court

Trial Judge:                    Hon. Judith Craddick

Counsel for Appellant:          Mellen Law Firm; Matthew Mellen and Duncan
                                McGee Nefcy

Counsel for Respondents:        Kirby & McGuinn; Jana Logan