Filed 7/11/19; Certified for Partial Pub. 8/7/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THADDEUS J. POTOCKI et al., | C081345 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201400160873CUORGDS ) |
| v. | |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants and Respondents. | |

Plaintiff borrowers Thaddeus J. Potocki and Kelly R. Davenport sued Wells Fargo Bank, N.A. and several other defendants (collectively, "Wells Fargo") arising out of plaintiffs' attempts to get a loan modification. The trial court sustained Wells Fargo's demurrer to the third amended complaint without leave to amend.

On appeal, plaintiffs contend (1) a forbearance agreement obligated Wells Fargo to modify their loan; (2) the trial court erred in finding Wells Fargo owed no duty of care; (3) Wells Fargo's denial of a loan modification was not sufficiently detailed to satisfy

1

Civil Code section 2923.6[1]; and (4) a claim of intentional infliction of emotional distress was sufficiently pled.

Plaintiffs' third contention has merit. We will reverse the judgment of dismissal, vacate the order sustaining the demurrer insofar as it dismisses the claim for a violation of section 2923.6, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Following several successful demurrers, plaintiffs filed their third amended complaint alleging five causes of action: (1) breach of contract, (2) violation of Business & Professions Code section 17200, (3) negligence, (4) violation of section 2923.6, and (5) intentional infliction of emotional distress. As alleged, plaintiffs bought their home in 2004. In 2009, they fell several months behind on mortgage payments. They contacted their mortgage servicer, Wells Fargo, and were offered a loan modification in exchange for agreeing to make three trial payments of $1,633.53.[2] Plaintiffs made the three payments but were never provided mortgage modification paperwork. Three months later, a notice of default was recorded. Shortly after, plaintiffs filed a lawsuit against Wells Fargo alleging wrongful foreclosure related claims, but it was dismissed by plaintiffs without prejudice in early 2014. The complaint in this case was filed in early 2014.

In late 2014, plaintiffs submitted a completed loan modification application with supporting documents requested by Wells Fargo. Wells Fargo reviewed plaintiffs for two separate modifications: a Home Affordable Modification Program or "HAMP" modification, and a non-HAMP "Trial Payment Plan" modification.

---

[1] Undesignated statutory references are to the Civil Code in effect at the time of the alleged events.

[2] As discussed below, the "forbearance agreement" attached to the third amended complaint showed there was no promise of a loan modification.

2

Two months later, plaintiffs received a denial for the HAMP modification. The denial explained Wells Fargo could not modify the mortgage because: "[We] do not have the contractual authority to modify your loan because of limitations in our servicing agreement."

Plaintiffs also received a letter regarding the non-HAMP "Trial Payment Plan" review. It stated: "We have good news about the above referenced loan. . . . We want to ensure that you have every opportunity to retain your home." The letter went on to say that the plaintiffs were required to make three trial payments, the first being $171,745.78, which was "essentially an initial payment of the past due total arrearages . . . ." The plaintiffs allege it was a constructive denial.

Plaintiffs appealed the decisions with Wells Fargo, and "both denials" were affirmed. Plaintiffs also allege that had Wells Fargo "fairly and carefully reviewed them for the modification, they would have been approved and would not have suffered the damages alleged herein."

The trial court sustained Wells Fargo's demurrer to the third amended complaint as to all causes of action without leave to amend. Plaintiffs timely appealed from the judgment of dismissal following the demurrer.

## DISCUSSION

### I. Standard of Review

When reviewing an order sustaining a demurrer, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose." (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) "[W]e accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346.)

3

## II.  Breach of Contract Claim

Plaintiffs contend the trial court erred in finding the forbearance agreement did not obligate Wells Fargo to modify the loan.  We disagree.

### A.  Additional Background

The third amended complaint alleged that plaintiffs and Wells Fargo entered into a written contract, agreeing to a mortgage modification in exchange for three trial payments.  Wells Fargo "effectively breached the contract in April of 2014 by the acts and omissions" alleged in the complaint.  The complaint included, as an exhibit, a copy of the purported contract.

That exhibit was a letter from Wells Fargo dated August 12, 2009.  It said, "[W]e would like to offer you a Special Forbearance Plan" and referred multiple times to the agreement Wells Fargo was offering as a "Special Forbearance Agreement."  It went on to explain:  "This is not a waiver of the accrued or future payments that become due, but a period for you to determine how you will be able to resolve your financial hardship."  The letter also explained any foreclosure proceedings would be suspended as long as the terms of the forbearance were kept.

The letter continued:  "Upon successful completion of the three regular payments as outlined in this plan, your loan will be reviewed for a Loan Modification, based on investor approval, which will satisfy the remaining past due amount on your loan. [¶] The lender is under no obligation to enter into any further agreement, and this forbearance shall not constitute a waiver of the lender's right to insist upon strict performance in the future."

Opposing Wells Fargo's demurrer, the plaintiffs argued the temporary payment plan coupled with their being lead to believe a permanent modification was "at the end of the tunnel" tantamount to a binding contract.  In support, they cited *West v. JPMorgan*

4

*Chase Bank, N.A.* (2013) 214 Cal.App.4th 780 (*West*), which held a "Trial Plan Agreement" required the lender to offer a permanent loan modification.[3]

The trial court sustained the demurrer to the claim without leave to amend, explaining, "[t]he very terms of the purported contract make clear that alleged contract did not contain any promise to modify the loan." Rather, the forbearance agreement was only an agreement to temporarily reduce payments and a promise to review the loan for modification if the reduced payments were made. Further, the plaintiffs' reliance on *West* was misplaced, as its holding was limited to trial plans offered under HAMP.[4]

## B. Analysis

On appeal, the plaintiffs argue the trial court erred in finding the forbearance agreement did not obligate Wells Fargo to modify the loan, maintaining their case is "virtually the same" as *West*. According to plaintiffs, Wells Fargo as a HAMP signatory was under the same obligation to offer a loan modification on completion of the three payments under the forbearance plan. We disagree.

No breach of contract occurred as the "forbearance agreement" expressly disclaimed a promise to modify. It stated: "The lender is under no obligation to enter into any further agreement, and this forbearance shall not constitute a waiver of the lender's right to insist upon strict performance in the future." (See *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 56 [on review of a ruling on a demurrer,

---

[3] The plaintiffs' request to judicially notice their opposition to the demurrer to the third amended complaint is construed as a motion to augment the record and is granted.

[4] At the hearing, the trial court expressed to the mortgagor's counsel, "the terms of the contract that you attached to the complaint, make it pretty abundantly obvious that the alleged contract did not contain any promise to modify the loan." Counsel responded, "I understand that . . . and that is why I did not request argument on the breach of contract claims."

"[i]f the facts expressly alleged in the complaint conflict with an exhibit, the contents of the exhibit take precedence"].)

Further, as the trial court explained, *West* is inapposite. In that case, West had received a letter that she had been approved for a Trial Period Plan, or "TPP," a form of temporary loan payment reduction under HAMP, which the bank called a "Trial Plan Agreement." (*West, supra,* 214 Cal.App.4th at pp. 786, 789.) The letter explained: "If you comply with all the terms of this Agreement, we'll consider a permanent workout solution for your loan once the Trial Plan has been completed." (*Ibid.*) West complied with the terms of the TPP, making the required payments and submitting the requested documents. Nevertheless, she was denied a modification and her home was sold. (*Id.* at pp. 789-790.) Following a successful demurrer, the court of appeal reversed, concluding that West had stated a claim for breach of written contract. (*Id.* at pp. 791, 796.)

The *West* court held that "when a borrower complies with all the terms of a TPP, and the borrower's representations remain true and correct, the loan servicer must offer the borrower a permanent loan modification." (*West, supra,* 214 Cal.App.4th at p. 786.) The court reasoned that although the agreement did not promise a permanent loan modification if West satisfied the terms, "such a proviso is imposed by the United States Department of the Treasury through [HAMP Supplemental Directive 09–01 (Apr. 6, 2009)]" and HAMP guidelines. (*West,* at pp. 797-798.) Thus, for the Trial Plan Agreement to be lawful and comply with HAMP, the bank's reevaluation following the trial period would be limited to determine if West had complied with the terms of the trial plan and whether her original representations were correct. (*Id.* at p. 798.) West's compliance obligated the bank to offer her a permanent loan modification. (*Id.* at p. 799.)

Here, however, the "Special Forbearance Plan" was not offered under HAMP, and plaintiffs do not suggest otherwise. (See *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1176 [where the trial plan was not alleged to be under HAMP, no contract existed requiring the lender to modify the loan].) Plaintiffs

6

nevertheless argue *West's* rationale still applies where a bank induces a borrower to pay in hopes of a modification. But whereas *West* was grounded in a Treasury directive and HAMP guidelines and the agreement between the borrower and lender in that case was a TPP under HAMP, plaintiffs offer no comparable authority for imposing a similar obligation into the forbearance agreement.

The demurrer to the claim for breach of contract was properly sustained.

### III.  Negligence Claim

As to their negligence claim, plaintiffs contend the trial court erred in finding no duty of care existed. We conclude the demurrer to this claim was properly sustained.

### A.  Additional Background

In relevant part, the third amended complaint alleged:  "Defendants owed Plaintiffs a general duty of care. Plaintiffs and defendants entered into a contract that was not honored. Additionally, Plaintiffs have subsequently spent hours of time and submitted completed loan modifications with pages and pages of documentation to defendants which was ultimately denied in bad faith resulting in the damages below. [¶] Further, the defendants negligently made false representations when they promised a permanent loan modification in exchange for three trial payments."

Opposing the demurrer, plaintiffs cited *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941 (*Alvarez*), which held that when a bank agrees to consider a loan modification, it owes a duty to timely and carefully process the modification application. They argue Wells Fargo thus owed a duty of care to diligently handle their modification application and provide a detailed denial. They also argued that a *per se* duty of care was owed based on Wells Fargo's violation of the Homeowner Bill of Rights.

The trial court sustained the demurrer, explaining the allegations that Wells Fargo owed a "general duty of care" and failed to honor the contract to modify the loan were insufficient. Citing *Alvarez,* the court noted a financial institution can owe a duty of

7

reasonable care in processing loan modifications. But, here, plaintiffs merely alleged a contract was not honored — when, in fact, no such contract existed. Further, plaintiffs alleged no facts to suggest Wells Fargo breached a duty in connection with a loan modification review. As to the claim of negligence per se, the court noted the third amended complaint contained no reference to any such violation and was thus defectively pled.

## B. Analysis

On appeal, plaintiffs argue the trial court failed to "adequately apply" *Alvarez*. They contend, as in *Alvarez*, Wells Fargo failed to "carefully review [them] for loss mitigation options." Further, Wells Fargo owed a duty to cautiously review plaintiffs' application, provide detailed denials, and correspond in a manner that prevents undue emotional distress. Plaintiffs also allege that a per se duty of care is owed by virtue of a violation of the Homeowner Bill of Rights. We disagree.

We will assume without deciding that Wells Fargo owed a duty of care in processing the loan application. The plaintiffs, however, fail to allege any breach of that duty. As discussed, the parties never entered into a contract to modify the loan. And the plaintiffs allege no facts that might suggest a failure to comply with any duty articulated in *Alvarez*. (See *Alvarez*, *supra*, 228 Cal.App.4th at p. 945 [alleging defendant failed to timely review applications, foreclosed while considering a HAMP modification, and mishandled applications by relying on incorrect information]; see also *Rossetta v. CitiMortgage, Inc.* (2017) 18 Cal.App.5th 628, 643 [alleging borrower was dragged through a "seemingly endless application process, requiring her to submit the same documents over and over again," documents were lost or mishandled, the status of various applications were mishandled, and borrower was ultimately denied for "bogus reasons"].) Simply alleging that the modification was "denied in bad faith" is insufficient. (See *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 527 ["there are 'limits to the generality with which a plaintiff is permitted to state his cause of action' "].)

8

Nor does the argument of a per se duty rehabilitate this contention. "[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 534; see also *Elsner v. Uveges* (2004) 34 Cal.4th 915, 928 [with negligence per se "[s]tatutes may be borrowed in the negligence context for one of two purposes: (1) to establish a duty of care, or (2) to establish a standard of care"].) Again, even assuming a duty of care is owed in the processing of the modification, plaintiffs fail to allege any breach.[5]

The trial court properly sustained the demurrer to the negligence claim.

### IV. The Homeowner Bill of Rights Claim

As to their claim under section 2923.6 of the Homeowner Bill of Rights, plaintiffs contend the denials as alleged are not sufficiently detailed. We agree a claim has been stated.

### A. Additional Background

The third amended complaint alleged the plaintiffs submitted a completed loan modification application and received two written denials, both of which were insufficiently detailed to comply with section 2923.6, subdivision (f). As alleged, Wells Fargo's explanation for denying the HAMP modification was that it lacked, "the contractual authority to modify your loan because of limitations in our servicing agreement." The non-HAMP modification was approved but required an initial payment of $171,745.78. The plaintiffs alleged it was a constructive denial.

The trial court sustained the demurrer concluding allegations were vague, and plaintiffs failed to provide authority that anything more was required.

---

[5] The plaintiffs' claims that Wells Fargo failed to provide detailed denials and correspond in a manner avoiding undue emotional distress are discussed *post*.

## B. Analysis

Section 2923.6 subdivision (f) of the Homeowner Bill of Rights requires a servicer, following the denial of a loan modification, to send written notice "identifying the reasons for the denial." Subdivision (f)(2) further requires that "[i]f the denial was based on investor disallowance, the *specific reasons* for the investor disallowance" must be given. (§ 2923.6, subd. (f)(2), italics added.)

Here, a claim was stated as to the denial of the HAMP modification.[6] The explanation that "[we] do not have the contractual authority to modify your loan because of limitations in our servicing agreement," does not suffice as an explanation — at least for purposes of a demurrer. The statement is ambiguous and appears to imply the investor has not allowed the modification. If that is the case, subdivision (f)(2) requires the "specific reasons for the investor disallowance." As is, the explanation appears to communicate little more than the modification was denied because the investor did not want to approve it.[7]

Wells Fargo responds by noting that where a trustee's deed upon sale has not been recorded (the case here), a borrower may only bring a claim for injunctive relief to enjoin a material violation of section 2923.6. (§ 2924.12, subd. (a)(1).) To that, Wells Fargo maintains any violation of section 2923.6 was not material in that plaintiffs would not have been better able to protect their rights or achieve a more favorable outcome absent the violation. We disagree. Without knowing the investor's actual reason for denying

---

[6] As to the non-HAMP modification, no claim was stated as the application was not denied.

[7] Responding to plaintiffs' argument that the denial failed to say what servicing agreement was being referred to, Wells Fargo argues there is little doubt the servicing agreement was "the pooling and servicing agreement which created and governed the WFASC 2005-AR1 securitized trust into which plaintiffs' loan was transferred." Assuming this is true, it does not explain why the HAMP modification was denied.

the HAMP modification, we cannot say for certain that the failure to provide "specific reasons for the investor disallowance" was not material.

We will reverse the trial court's order sustaining the demurrer to the section 2923.6 claim and remand for further proceedings.

### V.  Intentional Infliction of Emotional Distress

Finally, as to their claim of intentional infliction of emotional distress, plaintiffs contend the allegations are sufficient to sustain a cause of action.  We disagree.

### A.  Additional Background

The third amended complaint alleged Wells Fargo's irrational refusal to offer plaintiffs help "is extreme and outrageous" conduct.  At a hearing on the demurrer, plaintiffs' counsel explained that sending a letter congratulating them on being approved for a loan modification, only to tell them they have to pay over $100,000 in order to accept, is "outrageous and unreasonable."

Counsel for Wells Fargo responded that plaintiffs had not made a mortgage payment in six years, and it is standard practice for a bank to agree to "piggy bank" 12 months of late payments, but no more.  The amount plaintiffs were asked to pay would bring the arrearages to within 12 months of being current.

In sustaining the demurrer, the trial court explained that creditors enjoy a qualified privilege to protect their economic interest by asserting their legal rights even though doing so may cause emotional distress.  Requiring plaintiffs to first pay $171,745.78 to cover past due arrearages was not extreme and outrageous.

### B.  Analysis

On appeal, plaintiffs argue the request for over one hundred thousand dollars is akin to saying, "sure, we'll give you a modification, just pay back all of the arrearages!" They maintain the trial court failed to adequately consider cases finding actionable conduct based on improper creditor action, and point to *Bundren v. Superior Court* (1983) 145 Cal.App.3d 784, 790 (*Bundren*), which held a creditor who knows the

11

debtor is susceptible to emotional distress due to a physical or mental condition may incur liability for causing emotional distress. They aver that Wells Fargo knew they had been trying to modify their loan since 2010, and could be made homeless. Thus, Wells Fargo knew its conduct was likely to cause more emotional distress than a typical debt collection. We disagree.

Putting aside that *Bundren* dealt with debt collection, not a mortgage modification, it is of no help to plaintiffs. The *Bundren* court explained that while creditors possess a qualified privilege to protect their economic interest, the privilege can be lost if outrageous and unreasonable means are used to seek payment. (*Bundren, supra*, 145 Cal.App.3d at p. 789.) No such conduct occurred here.

Plaintiffs were given an offer of a loan modification, albeit one they could not afford. The fact that the offer was prefaced with "We have good news . . . " is not " ' "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." ' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 904–905.)

The demurrer to the final cause of action was properly sustained.

## DISPOSITION

The judgment of dismissal is reversed.  The order sustaining the demurrer is affirmed in part and reversed in part.  It is reversed as to the fourth cause of action for violation of section 2923.6 of the Homeowners Bill of Rights.  In all other respects, the judgment is affirmed.  The parties shall bear their own costs on appeal.


_____/s/_____
MURRAY, J.


We concur:


_____/s/_____
RAYE, P. J.


_____/s/_____
BUTZ, J.

13

CERTIFIED FOR PARTIAL PUBLICATION<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THADDEUS J. POTOCKI et al., | C081345 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201400160873CUORGDS) |
| v. | |
| WELLS FARGO BANK, N.A., et al., | ORDER MODIFYING OPINION AND GRANTING REQUEST TO PUBLISH |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Christopher J. Fry for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, Jonah Van Zandt, Elizabeth Holt Andrews for Defendants and Respondents.

First American Law Group, Patrick Reider for Defendant and Respondent, American Servicing Solution, LLC

------

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II., III. and V. of the Discussion.

THE COURT:

The opinion in the above-entitled matter filed on July 11, 2019, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

It is also ordered that the opinion filed in this case on July 11, 2019, be modified as follows:

1.      On page 4, the third paragraph, second sentence beginning with "It said," delete the comma and replace with a colon after the word, "said."

2.      On page 4, the second sentence of the last paragraph, delete "lead" and replace with "led."

3.      On page 9, the first sentence of the last paragraph add the word "the" to be inserted between the words "concluding" and "allegation" so the sentence will now read:

> The trial court sustained the demurrer concluding the allegations were vague, and plaintiffs failed to provide authority that anything more was required.

This modification does not change the judgment.

**BY THE COURT:**


_____/s/_____
RAYE, P. J.


_____/s/_____
BUTZ, J.


_____/s/_____
MURRAY, J.

2